[No. 1119.]

PAOLO BIANCHI ET AL., RESPONDENTS, v. JOSEPH MAG-
GINI ET AL., APPELLANTS.

DESTRUCTION OF PROPERTY BY FIRE—COAL MANUFACTURED UNDER CONTRACT—
ACTION TO RECOVER CONTRACT PRICE MAINTAINED.—Plaintiffs, under a con-
tract, agreed to cut and clear off all the pine wood on defendants' ranch,
and reduce the same into merchantable charcoal, for fifteen cents per
bushel, and to accept the measure which defendants should receive when
the coal was sold, etc. Defendants agreed to transport the coal and sell the
same whenever it was to their interest so to do, and pay for the same on
every pay-day of the furnace where the coal was sold. After the coal was
manufactured, plaintiffs informed defendants that they had finished burn-

ing the coal. The coal remained on the ranch for nine months, when it was destroyed by fire, without the fault of either party. During this time. the price of coal was too low for defendants to transport and sell the same with profit. No person was left in charge of the coal. *Held*, that plaintiffs were entitled to recover the contract price for manufacturing the coal.

IDEM.—*Held*, upon a review of the facts, that there was nothing left undone by, plaintiffs which, by the terms of the contract, was a condition precedent to their right of recovery, and that the coal thereafter remained upon the ranch at the risk of defendants, and that they must bear the loss.

ERRONEOUS RULING—HOW CURED.—*Held*, that if the court erred in ruling out the testimony of one witness as to the custom and usage of coal burners, the error was cured by the subsequent and undisputed testimony of another witness to the same effect.

INSTRUCTIONS—ERROR WITHOUT PREJUDICE.—The giving of an erroneous instruction, which is not prejudicial to appellants, will not justify a reversal of the case.

CONTRACT—FAILURE TO CUT ALL THE WOOD NOT A DEFENSE—PLEADINGS.— *Held*, that if plaintiffs did not cut all the wood under the contract, this fact could have been pleaded, and the damages, if any, recovered as an offset; but it could not, under the facts of this case, be urged as an absolute defense to the action.

APPEAL from the District Court of the Sixth Judicial District, Eureka County.

The complaint, after alleging the making of the contract and the manufacturing of the coal, and the amount due plaintiffs for said work, labor and services, avers:

"That the same is now due plaintiffs from defendants, no part of which has been paid. That said work, labor and services were done and performed by plaintiffs for the said defendants, at the special instance and request of said defendants, and for their use and benefit."

The testimony as to the custom and usage of the people engaged in burning coal under similar contracts was as follows:

The parties burning the coal always sack it and load it on the teams. Of course they are not obliged to sack until the teams are sent by the other party to the place where the coal is, or a demand to sack the coal has been made. In regard to payments, the money is never paid to the coal burner for burning the coal, and is not considered due, until the coal is shipped and sold at the furnaces in Eureka. After the coal receipt is given at the furnace, the coal burner receives his money, generally in San Francisco checks.

The court, at the request of the plaintiffs, gave to the jury the following instructions:

The court instructs you as the law of this case:

1. That under the contract offered in evidence in this case, the defendants were required to pay the plaintiffs the contract price for such burning, to wit: fifteen (15) cents per bushel, within a reasonable time after the completion of the work by the plaintiffs, taking into consideration all the circumstances surrounding the execution and performance of such contract.

3. The court also charges you that, if you find from the evidence in this case that the coal was destroyed by fire on or about the seventeenth day of August, 1880, without any fault upon the part of the plaintiffs, or either of them, *this fact alone* constitutes no defense in this action.

4. (See opinion.)

5. If you believe, from the evidence in this case, that the custom under contracts of a like character to the one offered in evidence was, that coal burned under such contracts should be sacked by the parties engaged in burning, but that it was not customary to sack such coal until the parties burning the same were notified that the party whose duty it was to ship such coal was ready to ship it, and if you further believe, from the evidence in this case, that the defendants did not, at any time, so notify the plaintiffs that they were ready to ship such coal, then I charge you that the fact that plaintiffs did not sack the coal in question constitutes no defense to this action.

The court, on its own motion, gave to the jury the following charge:

The contract put in evidence in this case requires:

That the contractors shall cut all of the wood on the ranch and burn such wood into good merchantable coal; that the contractors should place the coal where it could be loaded, and that it should be loaded by the contractors; that the contractors should make the roads in that portion of the ranch where they worked, so as to render easy the transportation of the coal.

That the contractors shall be bound or concluded by the measurement which the purchasers should give for such as was

sold; that the Maggini brothers should pay fifteen (15) cents per bushel for cutting and burning the coal; that such payment should be made *after sale*, in checks or other manner of receipts of payment.

The contractors agree not to compel the defendants to sell the coal for a reasonable length of time, if during such time it was really against the interest of defendants.

If you believe, from the evidence, that after the plaintiffs had completed the burning of the coal destroyed, a reasonable time had elapsed before it was destroyed, in which it might and should have been marketed, and that during such time it could have been marketed without damage to the defendants, then, if you also find from the evidence that up to the time of such destruction the plaintiffs had done and performed all, things required of them under the contract concerning the coal, your verdict must be for the plaintiffs.

The court, at the request of the defendants, gave to the jury the following, among other, instructions:

1. The plaintiffs in this action are bound by the contract made on the first day of March, 1878, between the defendants and Lorenzo Armetta, and by its terms; they must recover under that contract, or not at all, unless the defendants have changed or modified it, or waived some of its terms.

4. You are instructed that it was the duty of defendants to ship and sell the coal when they had an opportunity so to do, provided they could sell the same at a price sufficient to pay all the expenses incurred, and they were not bound to sell at a loss to themselves, provided they used ordinary diligence to make a sale of such character.

The court refused the following, among other, instructions requested by defendants:

6. If you believe that under the terms of the contract it was the duty of Armetta, or his assigns, to keep the charcoal manufactured in his possession until the defendants shipped or sold the same to the furnaces at Eureka, then, in case the coal, or any part thereof, was burned up and destroyed before the same was shipped or sold, without the fault of defendants, plaintiffs cannot recover anything for the coal so burned up and destroyed, provided the defendants did not refuse to ship

and sell said coal at a fair price before said coal was so destroyed.

7. If you believe, from the evidence, that, under the contract and usage and custom of this country and vicinity, it was the duty of Armetta, or his assigns, to take charge of the charcoal until the same was sacked and delivered to defendants, then, if the coal was burned up and destroyed without the fault of defendants, and before the same was sacked by Armetta, or his assigns, the plaintiffs cannot recover anything for the coal so burned up and destroyed.

9. If you believe, from the evidence, that the defendants made a contract with Armetta, by the terms of which it was agreed that the pay for the coal burned should not accrue until the same was sacked and delivered to the furnaces at Eureka, then the plaintiffs cannot recover on such contract for coal not so delivered, even if you find the plaintiffs were the assignees of said contract, unless you believe that defendants in some way waived the terms of the contract. (Liable to mislead under the testimony in this case, and, therefore, refused.)

10. If you believe, from the evidence, that under the contract, plaintiffs as assignees of Armetta, were compelled to take care of and safely keep the charcoal manufactured under the contract, and plaintiffs went away and left the coal, and the same was burned up and destroyed by reason of the negligence and want of care of plaintiffs, then in that case, plaintiffs cannot recover anything for the coal so burned up and destroyed.

12. If you believe, by the terms of the contract between Armetta and defendants, it was the duty of the plaintiffs, as assignees of Armetta, to cut all the pine wood on the ranch mentioned in the contract, and burn the same into charcoal, and they failed to do so, in amount equal to five thousand (5,000) bushels of charcoal or thereabouts, then the contract was broken by plaintiffs, and they cannot recover in this action, unless you find that defendants have changed or modified the contract, or have waived the terms thereof in this respect.

13. You are instructed that, under the terms of the contract

between Armetta and defendants, the plaintiffs, as assignees thereof, were to hold possession of all charcoal manufactured until the same was shipped or sold by the defendants to the furnaces in Eureka, and if any charcoal was burned or destroyed before the same was shipped or sold, and without defendants' fault, and while so in possession of plaintiffs, then plaintiffs cannot recover anything for the coal so burned up and destroyed.

*F. W. Cole*, for Appellants:

I. The verdict is not sustained by the evidence, and it is against law. Under the evidence, and a proper construction of the contract, nothing was due thereunder to respondents until the coal was sacked and loaded on the wagons, sold, and shipped to the furnaces at Eureka, measured, and the money or coal receipts given therefor, and if the coal was destroyed by fire before all this was done, then the loss must fall on the respondents. The coal manufactured by respondents under the Armetta contract was destroyed by fire before they had complied with its terms by loading and sacking the same, and the selling it at the Eureka furnaces by appellants. The article manfactured was left by respondents in a position where something else was to be done to it before any money was due respondents for their work and labor. In such case the loss by fire must fall on respondents.

II. Under the contract and the usage and custom in Eureka in reference to such a contract, the coal-burner was entitled to no pay until the coal had been shipped, and sold, and payment therefor made at the furnaces in Eureka, and if the coal was destroyed by fire before all these things had happened, the loss must fall on respondents. (Storey on Bail., sec. 426, etc.; 2 Chitty on Con., 672, note; *Tompkins* v. *Dudley*, 25 N.. Y. 272; *Gillett* v. *Mawman*, 1 Taun. 136; *Appleby* v. *Myers*, 2 L. R. Com. Pleas cases, 651; *Brumby* v. *Smith*, 3 Ala. 123; *Trenton* v. *Bennett*, 27 N. J. Law, 513.)

III. The courts will give a liberal construction to a contract of this kind, and gather its meaning from the whole paper and the circumstances surrounding the parties, and will also take into consideration the subsequent conduct of the parties

in relation thereto.  (*Saunders* v. *Clark*, 29 Cal. 304; *McNeil* v. *Shirley*, 33 Cal. 202; *Thompson* v. *McKay*, 41 Cal. 221.)

IV. The respondents were guilty of negligence in leaving the coal with no person in charge, after the month of December, 1879, and the loss by fire must fall upon them.  (Storey on Bail., 364; 2 Chitty on Con., 672.)

V. It was error to strike out the questions asked Joseph Maggini and his answers thereto, in reference to usage and customs.

VI. The court below, in its charge and in the instructions given at the request of respondent, did not state the law of this case.

VII. The instructions asked for by appellants, and refused by the court, correctly stated the law of the case in reference to the destruction of the charcoal by fire, and it was error not to give them.

VIII. The instructions asked for by appellants, and refused, No. 12, correctly stated the law in reference to the failure of respondents to cut *all* the wood on the ranch, and should have been given.  By the terms of the contract all the wood on the ranch must be cut, and if the respondents failed so to do, there was a breach of the contract.  The complaint is one on contract, and not on *quantum meruit*.  Appellants were not compelled to set up a counter-claim.  The answer denied that respondents fulfilled the terms of the contract and alleged a breach.  This put in issue a fact, namely: the breach, and this instruction correctly stated the law in that behalf. Respondent chose to sue on the contract, and not on the *quantum meruit*, and appellants were entitled to have the question of a breach left to the jury.  There is no doubt but that in an action, founded on a *quantum meruit,* the price established by the contract will be the standard of value, provided the contract is abandoned; but this action is based alone on the contract, *and on that respondents must stand or fall.*  In another view of the case, this instruction should have been given to the jury.  If *all* the wood was not cut on the ranch, it was the duty of respondents to look after and take care of the charcoal until the wood was all cut, and, if they left the coal, this was negligence, and they cannot recover for labor done on the coal destroyed by fire.

*Baker & Wines,* for Respondents:

I. Under the contract, and the oral testimony given at the trial, appellants were required to market the coal within a reasonable time. The respondents were simply required to manufacture coal out of the wood of the appellants, at a stipulated price per bushel. This was done. The coal was left in proper condition on the ranch of the appellants, in the possession of the latter, the respondents quitting the work, all of which the appellants had notice at the time.

II. Neither the contract nor the oral testimony shows, by implication or otherwise, that it was incumbent upon the respondents to remain in charge of, or look after, the coal after the completion of the work. The instruction upon this point was properly refused, for the reason that there was no evidence upon which it could be based.

III. The court did not err in striking out the testimony in relation to custom and usage. Where there is an express contract, clear and definite in its terms, and which sufficiently shows the intent of the parties, evidence of custom or usage is not admissible to vary or add to such contract. (2 Whart. Ev., sec. 960; *Walls* v. *Bailey,* 49 N. Y. 464, 470; *Stagg* v. *Insurance Co.,* 10 Wall. 589, 593.) If this was error at all it is cured by the fact that subsequently witness Tognini did testify to the same facts. (*Litchfield* v. *Londonderry,* 39 N. H. 247; *Bull* v. *Griswold,* 19 Ill. 631; *Drake* v. *Surget,* 36 Miss. 458.)

IV. The court did not err in refusing defendants' instruction No. 12. It presents the question whether or not the action in its present form could be maintained under any circumstances. If the appellants were damaged by reason of the respondents not having completed the work as contemplated by the instruction, they had a complete remedy by filing a counter claim under section 47 of the practice act. (*Stoddard* v. *Treadwell,* 26 Cal. 294.) It was not error to refuse the instruction, for the reason that it ignores the fact that a substantial compliance is all that is required in any case. (*Voorman* v. *Voight,* 46 Cal. 392, 397.) It was not

error to refuse the instruction for a still further reason. The question of fact as to whether or not the respondents had completed the contract by burning all the wood on the ranch was fairly submitted to the jury by other instructions given by the court. The law is well settled that instructions once given, substantially, may be refused when asked for again with a slight change in language, although good law. (Hill. New Trial, Ch. 266; *Conroy* v. *Duane*, 45 Cal. 597; *Caples* v. *C. P. R. R.*, 6 Nev. 265; *Allison* v. *Hagan*, 12 Nev. 39.)

V. Instructions Nos. 6, 7 and 10 were properly refused, for the reason that there was no evidence whatever upon which they could be based. Instructions upon questions of fact, where there is no evidence of the facts contemplated, should not be given. (*People* v. *Roberts*, 6 Cal. 214; *Sherman* v. *Dilley*, 3 Nev. 21; *Sharon* v. *Minnock*, 6 Nev. 377; Hilliard on New Trials, Ch. 11, sec. 56, p. 295.)

VI. The law is well settled that an appellate court will not reverse the judgment of the lower court if it finds from the evidence that a judgment for the proper amount has been rendered, although errors may appear upon the record, but are such as not to affect the substantial rights of the parties. Even if there should have been a *quantum meruit* count in the complaint in this action, the court will not reverse the case for this reason. Even in an action upon a *quantum meruit* the price established by the parties to the contract will be accepted as the standard of value. Therefore in the absence of any claim for damages by reason of the alleged failure on the part of the respondents to burn all the wood into coal, the price, fifteen cents per bushel, will be accepted as the true value, and the court will observe that we have only obtained a judgment for the number of bushels actually manufactured. (*Cullen* v. *Sears*, 112 Mass. 299.) But even if an action upon a *quantum meruit* had been proper, the action may be maintained *as upon a quantum meruit*, provided a proper judgment has been rendered. (*Cummings* v. *Dudley*, Pac. Coast L. R., April 15, 1882, 316.)

By the Court, HAWLEY, C. J.:

This action was brought to recover the sum of eight thou-

sand eight hundred and fifty dollars, alleged to be due plaintiffs upon a contract for the manufacturing of charcoal out of wood upon the ranch of defendants. Plaintiffs are the assignees of the contract, and claimed that they burned fifty-nine thousand bushels of charcoal. They recovered judgment for five thousand eight hundred and thirty-six dollars and ninety cents (the deduction of the amount sued for being for an admitted offset.) During the pendency of a motion for new trial the sum of nine hundred dollars was remitted from the judgment.

On the seventeenth of August, 1880, forty-five thousand bushels of coal, manufactured by respondents, was destroyed by fire without the fault of either party, and the principal question to be determined upon this appeal is, which of the parties (or both) shall bear the loss.

The contract was written in Italian. Translated it reads as follows: "The present and following contract, made and concluded to-day, first day of March, 1878, between Lorenzo Armetta, of the county of Eureka, state of Nevada, party of the first part, and the Maggini brothers, of the same place, for the second party, certify and agree to what follows, that is: That the aforesaid Lorenzo Armetta takes the responsibility to cut and carry the wood, burn the same into good, salable coal, and to place it where he himself can load it on the wagons; that the aforesaid Maggini brothers will send for its transportion to Eureka. Furthermore, he agrees to make the roads necessary to easen the transportation of the coal in that portion of the ranch assigned, * * * and to cut and clean off all of said portion of said ranch, wherever pine wood is to be found, and to be reduced into merchantable charcoal. * * * Further, said Lorenzo Armetta agrees to not compel the said Maggini brothers to ship or sell said coal at the furnaces in Eureka if they do not find it to their interest. The aforesaid Lorenzo Armetta agrees to perform said labor in accordance with the mentioned conditions and specifications, and to receive the sum of fifteen (15) cents for each bushel of coal by him made, and to accept the measure that the aforesaid Maggini brothers shall receive from those that purchase the coal. The said brothers agree to pay the sum of fifteen (15) cents per bushel of coal on every pay-day of the furnace

where the same is sold, in San Francisco check, payable in such manner as they shall receive it. They also agree to furnish the said L. Armetta the work and provisions for not more than four men. In case they should not desire to sell the coal, by reason of low prices or high freight, the provisions shall be paid for with the first coal sold.

" In faith we both sign."  *  *  *

The coal, under this contract, was manufactured prior to the twelfth day of December, 1879, at which time the respondents came into Eureka and informed appellants that "they had finished burning the coal." They made no demand for any money due on the contract until the commencement of this suit. The price of charcoal at Eureka, after this coal was manufactured and up to the time of its destruction by fire, was never more than twenty-eight cents per bushel (with a deduction of two cents royalty), and was at times as low as twenty-two cents. The freight from the ranch to the furnaces at Eureka was thirteen cents per bushel, and sometimes as high as seventeen cents. It was worth two cents per bushel to sack and load the coal.

What is the rule of law applicable to the facts of this case ?

The rule is well settled that if parties enter into a contract for the erection of a building, and the property is destroyed by fire before the building is completed, the contractors cannot recover, because they have not done the work which they agreed to do. (See authorities cited by appellants.) But this rule would be changed if the owner of the building took possession before the property was destroyed, although the work might not have been fully performed by the contractor (*Lord* v. *Wheeler*, 1 Gray 282), and if a person agrees to repair another's house already built, such destruction of the building puts an end to the contract, and the contractor can recover for the value of the work and labor performed. (*Cleary* v. *Schier*, 120 Mass. 211.)

Storey, in his treatise upon bailments, in discussing the general principles of the common law, among other things, said:

" That if the thing of the employer, on which the work is done, and for which materials are furnished, is, by accident and without any fault of the workman, destroyed or lost

before the work is completed, or the thing is delivered back, the loss must be borne by the employer, and he must pay the workman a full compensation for the work and labor already done, and materials found, although he has derived no benefit therefrom.   *   *   *   However, the general rule may be controlled by a special agreement of the parties or by the general usage and custom of the trade." (Section 426 a.)

"Section 426 b: The foregoing doctrine proceeds upon grounds applicable to the general contract of hire. But suppose there is a contract to do work on a thing by the job (as, for example, repairs on a ship), for a stipulated price for the whole work, and the thing should accidentally perish or be destroyed, without any default on either side, before the job is completed, the question would then arise whether the workman would be entitled to compensation *pro tanto* for his work and labor done and materials applied up to the time of the loss or destruction. It would seem that by the common law in such a case (independent of any usage or trade) the workman would not be entitled to any compensation, and that the rule would apply that the thing should perish to the employer and the work to the mechanic, for the contract by the job would be treated as an entirety, and should be completed before the stipulated compensation would be due. If, indeed, the job was completed before the accident or loss, although the thing was not delivered, it would or might be otherwise, for then the mechanic would or might be entitled to his full compensation." Both parties rely upon this text. Appellants claim that this case comes within the rule "that the thing should perish to the employer and the work to the mechanic." Respondents contend that it is a case where the workmen are entitled to " full compensation."

We have examined several authorities in addition to those cited by counsel, but the text in Story upon bailments is as fair a statement of the general rule as is to be found in the decided cases. The controlling question, as to the right of the workmen to recover, seems to be whether anything has been left undone by them which, by the terms of the contract, is a condition precedent to their right of recovery.

The position taken by appellants, that respondents cannot

recover because there was nothing due upon the contract " until the coal was sacked and loaded on the wagons, sold, and shipped to the furnaces at Eureka, measured, and the money or coal receipts given therefor," is not sustained by the authorities.

It is true that respondents had not sacked and loaded the coal, as by the terms of the contract they agreed to do; but this was not their fault.    If they had, as they claim, finished the burning of the coal, they had done everything they agreed to do, except to sack and load the coal, and this they could not do until appellants were ready to haul the coal away. They only seek to recover the contract price for manufacturing the coal; the nine hundred dollars which they remitted from the judgment being the value of the work for sacking and loading the coal.

There was, it seems to us, nothing more which they could have done in order to complete their part of the contract, and there was nothing else to be performed by them which could reasonably be construed as a condition precedent to their right of recovery.   The fact that payments were not to be made until the coal was shipped to Eureka, measured and the money or coal receipts given therefor, does not prevent respondents from maintaining this action.

In *Rawson* v. *Clark*, a written contract was entered into wherein Clark agreed to manufacture and place in Rawson's building certain iron work for a certain price; eighty-five per cent. thereof was to be paid on the certificate of the architect as the work progressed, and fifteen per cent. when the work was completed.   After all the iron was manufactured, but before any of it was set up, and but one load delivered, the building was wholly destroyed by fire, and was not rebuilt.

In an action to recover the contract price for manufacturing the iron, Rawson, among other things, insisted that the obtaining of the architect's certificate was a condition precedent to the right to bring the action; but the court held that the reason of Clark's not completing the contract by placing the iron in the building was the default of the defendant in not having a building provided for that purpose, and that the " case contemplated for the giving of the architect's certificate never

arose," and that the plaintiff was entitled to recover the price of the iron work. (70 Ill. 657.)

In the present case no time was specified within which the coal was to be hauled away and sold. The payment to the respondents, however, was not to be made until the coal was sold by appellants, and then in the manner specified in the contract; but the occasion therein provided for never arose, and never could arise, because the coal was destroyed by fire before it was sold. The real question, therefore, is at whose risk the coal was left after it was manufactured.

"When property, real or personal, is destroyed by fire, the loss falls upon the party who is the owner at the time." (*Wells* v. *Calnan,* 107 Mass. 515.)

Who owned the coal? Not the respondents. They could not sell it or dispose of it. It did not belong to them. When manufactured it became the property of appellants. They were the owners. It was on their ranch, and they had the right to sell or dispose of it upon such terms and conditions, and at such times, as they saw fit.

After respondents completed their contract and performed the work they had agreed to do, the coal, in our opinion, remained upon the ranch at the risk of appellants, and if it was stolen, or destroyed by fire, without the fault of respondents, then the appellants, in the absence of any conditions expressed in the contract upon this point, must bear the loss. Respondents were required to use ordinary diligence in protecting the pits while engaged in manufacturing the coal; but there are no provisions in the contract, or any custom or usage as testified to, that required them to keep possession of the coal, or to pay the expense of a watchman or keeper, to protect the same after it was manufactured, and they were not, therefore, guilty of any negligence in this respect which would prevent a recovery upon their part.

The other questions will be briefly disposed of.

The court's construction of the contract was substantially correct.

The instruction given by the court, that "defendants were required to pay the plaintiffs the contract price" for burning the coal "within a *reasonable time* after the completion of the

work by the plaintiffs," introduced a false quantity for the consideration of the jury, the true question being, as we have before stated, at whose risk the coal was left, and who should bear the loss in case of its destruction. The question as to whether a reasonable time had elapsed for the sale of the coal, and payment to plaintiffs was erroneously introduced into the case; but this was not prejudicial to appellants, and it is apparent that they are not entitled to have the case reversed upon this ground.

Upon the trial the defendant, Joseph Maggini, testified that "the plaintiffs did not cut all the pine wood on the ranch, and burn it into coal, as was agreed in the contract. They left wood uncut to the amount of five thousand two hundred and twenty (5,220) bushels of charcoal. We afterwards had the same cut by other parties, and burned."

Plaintiff, Bianchi, in rebuttal upon this point, testified "that the five thousand (5,000) bushels of coal, which Maggini had testified had been burned from the wood left on the ranch, was burned by parties who had commenced to manufacture the coal for Maggini brothers before the plaintiffs had finished burning the coal under the contract, and was not upon that part of the ranch mentioned in the contract."

This was the only testimony introduced upon this point, and the jury might very properly have found as a fact, as they were required to do by certain instructions if they found in plaintiffs' favor, that the plaintiffs had fully complied with the terms of the contract in this respect. But appellants contend that if respondents had not cut all the wood they could not recover for the coal actually manfactured in an action upon the contract, although they might recover upon a *quantum meruit*, and several instructions, bearing upon this question, were asked, some being given and others refused.

Upon a review of all the testimony we are of opinion that the notification given by respondents, that they had finished the contract, amounted to a delivery of the coal, and that defendants having accepted the same, with full knowledge of all the facts, were liable for the contract price of the coal manufactured. (*Ruffee* v. *U. S.*, 15 Ct. of Claims, 291.)

If the respondents had not cut all the wood this fact could

---

---

have been pleaded, and damages, if any resulted from the failure, recovered as an offset; but it could not, under the circumstances of this case, be urged as an absolute defense to the action. . The fourth instruction given by the court, at the request of plaintiffs, to-wit: "Even if you should believe, from the evidence in this case, that there was wood left upon the ranch where this coal was burned, which the plaintiffs could have reduced into coal, this constitutes no defense in this action, brought to recover the contract price for the coal actually burned, unless the defendants have established, to your satisfaction, that the alleged failure of the plaintiffs damaged them, and then only, to the extent of the damage," was correct, and the court did not err in refusing to give the instructions asked upon this point by defendants.

The ruling of the court in striking out the testimony of the witness Maggini, as to the custom and usage of the trade in not paying for coal until after it is sold, even if erroneous, was cured by the subsequent admission of the undisputed testimony of the witness Tognini to the same effect. (*Menzies v. Kennedy*, 9 Nev. 159.)

The judgment, with the remission of nine hundred dollars, is sustained by the pleadings and evidence, and is in accord with the justice and law of the case, and is hereby affirmed.