Argued March 15, affirmed May 17, 1961

# COLLINS *v.* POST ET AL

362 P. 2d 325

*Bruce W. Williams*, Salem, argued the cause for appellant. On the brief were Williams & Skopil, Salem.

*E. L. Crawford*, Salem, argued the cause for respondents. On the brief were Crawford and Garrett, Salem.

Before WARNER, Presiding Justice, and SLOAN, O'CONNELL, GOODWIN and LUSK, Justices.

WARNER, J.

This is an action brought by plaintiff, Collins, against defendants, Post and Viesko, to recover for work, labor and materials. The trial was had before the court without a jury and resulted in a dismissal of plaintiff's complaint.

In September, 1957, defendants entered into a contract with the state of Oregon for the construction of the State Correctional Institution, near Salem, Oregon. The amount involved was approximately two and one-half million dollars. They subcontracted a portion of the work to plaintiff, who agreed to perform the same for an amount in excess of $560,000.

Plaintiff's subcontract included, among other things, the construction of a tunnel carrying a steam line from the main building of the institution a considerable distance for the purpose of serving and heating residences being erected for the use of the institution's personnel. The tunnel was completed by plaintiff in accordance with his subcontract about August, 1958.

Sometime in January, 1959, the tunnel was badly damaged in an amount approximating $9,000 through the negligence of parties other than plaintiff or defendants. We are not required to make a determination of who was responsible for the damage, but it will tend to clarify our statement to observe that it was apparently caused by another contractor or his subcontractors. The other contractor was charged with the construction of one of the residential buildings above referred to. His work was under a separate contract with the state and he had no contractual relationship with either plaintiff or defendants. However, the structure he was building was one to be served by the steam tunnel and the parties are agreed that facility was damaged as a result of the independent contractor's use of it to carry steam to the building he was engaged in erecting.

The work and material going into the repair of these damages was undertaken and completed by plaintiff. Plaintiff contends that this work was done at the special instance and oral request of defendants. Although defendants made no express promise to pay for the same, plaintiff seeks to obligate them on the theory of an implied promise.

Defendants admit (1) that they urged plaintiff to repair the damage so that acceptance of the work under the principal contract would not be delayed; and (2)

that they promised plaintiff they would help him collect his damage from the parties responsible.

The appeal presents but one question: was plaintiff obligated under the terms of his subcontract with defendants to repair the damage at his own cost or can he rest his claim upon the theory of an implied promise to pay?

The trial court found that plaintiff received no written change of orders from defendants as provided by the contract and concluded that under the contract he was obligated by its express terms to deliver the tunnel in satisfactory working condition at the time of its acceptance by the state. It also found that defendants made no direct promise to pay plaintiff for the work.

We find ourselves in accord with these findings and conclusions for the reasons which follow.

■ The pertinent provisions of the subcontract are found in Articles I, III and VI, which read:

## "ARTICLE I

"The Sub-Contractor shall provide all the material, supplies and equipment and perform all the labor necessary (for the mechanical work) as called for by, and in strict conformity with the contract, specifications, plans and drawings, and any addenda thereto, which said contract, specifications, drawings and plans and addenda, if any, constitute the contract between the Contractor and the Owner, and are hereby incorporated herein and made a part hereof with the same effect as if set forth herein at length.

## "ARTICLE III

"The Sub-Contractor agrees to be bound with the Contractor by all of the terms of the contract, and to assume toward him all the obligations and

responsibility that he, by those documents, assumes toward the Owner, and to indemnify and save harmless the said Contractor from any and all loss, costs, damage or liability due to the failure of the Sub-Contractor to fully and faithfully keep and perform every obligation of the Contractor to the Owner in connection with the work hereunder undertaken by the Sub-Contractor.

## "ARTICLE VI

"No extra work or changes will be recognized or paid for unless done pursuant to written instructions from the Contractor, said written instructions to specify what, if any, additional compensation or deduction is to be allowed or charged to Sub-Contractor therefor."

Under the terms of the principal contract the care and protection of the construction were defendants' responsibility until formal acceptance and that part of the subcontract was, as between contractor and subcontractor, the responsibility of the subcontractor as well. Acceptance by the state was made late in May, 1959.

■ The general rule is that one who contracts absolutely and unqualifiedly to erect a structure for a stipulated price enters into an entire contract to complete such work and must bear the losses resulting from its accidental destruction or damage before completion. The underlying theory is that destruction or damage of the subject matter is no legal justification for nonperformance of the contract unless the contract stipulates that he will not be responsible for losses occurring in such manner. Such a contractual immunity is not present here. 17 CJS 961, Contracts § 466b; 9 Am Jur 43, Building and Construction Contracts § 60; Anno,

53 ALR 105, 109. See, also, *Savage v. Glenn*, 10 Or 440.

We find plaintiff in such a position of liability both by reason of Section 30 of defendants' contract with the state, which renders them as contractors "responsible for all damage to property," and Art III, supra, of plaintiff's subcontract.

■ The work done by plaintiff was not "extra work" or "changes" as those terms are used in Art VI, supra. It did not involve work arising outside the contract as originally drawn or subsequently amended. He was not to make a change in the construction. The work done by him was clearly in the nature of a replacement or restoration of construction which had been completed under his subcontract in accordance with the plans and specifications. It, therefore, required no written instructions from the contractor under Art VI, supra.

■ When a trial court sits as a jury its findings of fact will not be disturbed on appeal if there is substantial evidence to support it. *Pac. Trailways v. S. W. Roofing Co.*, 206 Or 328, 330, 290 P2d 787; *Norswing v. Lakeland Flying Service*, 193 Or 91, 101, 237 P2d 586.

There is some conflict in the evidence as to what defendants said to plaintiff concerning the doing of the necessary repair work, but our examination of the record warrants the observation that it does not support plaintiff's contention that defendants made any representations to him from whence one can derive an implied promise by defendants to reimburse Collins. The only comfort plaintiff can glean from his conferences with defendants is their gratuitous promise to help him secure his reimbursement from

those responsible for the damage; and that defendants attempted to do so in his behalf.

But even if we found that it might be said that defendants had committed themselves in a way implying a promise to pay, it would be unenforceable here because of our holding above that plaintiff's obligation under the subcontract bound him to make the necessary repairs to the tunnel without compensation for so doing. See *Hoskins v. Powder Land & Irr. Co.*, 90 Or 217, 223, 176 P 124, where Mr. Justice BURNETT quoted with approval the following from 13 CJ 353, Contracts § 209:

> "The promise of a person to carry out a subsisting contract with the promisee or the performance of such contractual duty is clearly no consideration, as he is doing no more than he was already obliged to do, and hence has sustained no detriment, nor has the other party to the contract obtained any benefit. Thus a promise to pay additional compensation for the performance by the promisee of a contract which the promisee is already under obligation to the promisor to perform is without consideration."

See, also, *Enco, Inc. v. F. C. Russell Co.*, 210 Or 324, 338, 311 P2d 737; *Stoop v. U. S. National Bank*, 119 Or 645, 652, 250 P 760.

The judgment of the circuit court is affirmed.