**VINSANT PLUMBING AND HEATING COMPANY, INCORPORATED**

v.

**RUDDER CONSTRUCTION COMPANY, INCORPORATED, et al.**

Court of Appeals of Tennessee, Eastern Section.

March 16, 1971.

Certiorari Denied by Supreme Court May 1, 1972.

McCampbell, Young, Bartlett & Woolf, Knoxville, for appellant, Rudder Const. Co.

Norman L. Griffin, Knoxville, for appellant, Vinsant Plumbing and Heating Co., Inc.

Howard F. Jarvis, Knoxville, for appellee, Federal Ins. Co.

## OPINION

COOPER, Presiding Judge (E.S.).

Vinsant Plumbing and Heating Company, a subcontractor, brought suit in the Chancery Court of Knox County against its insurer, the Federal Insurance Company, and against the general contractor, Rudder Construction Company, Inc. and the general contractor's insurer, the Hartford Fire Insurance Company, to recover the cost of replacing copper tubing stolen from the job-site of the low rent housing project in Knoxville known as Job No. 175, Turnkey Project.

The suit against the Hartford Fire Insurance Company was dismissed on demurrer, on the ground complainant alleged no facts which would support the imposition of a duty upon Hartford "to indemnify, reimburse or pay [complainant] for [its] loss."

On trial of the suit against the other defendants, the chancellor concluded the stolen material was the property of the defendant, Rudder Construction Company, Inc., at the time of the theft and that Rudder was liable to complainant, on an open account, for payment of materials purchased by complainant to replace the stolen material.

A decree was then entered in favor of the complainant against Rudder for $5,939.74, plus specified interest. The suit against the Federal Insurance Company was dismissed.

Both the defendant Rudder and the complainant, Vinsant Plumbing and Heating appealed, Rudder complaining of the chancellor's finding it was the owner of the stolen material and was liable for its replacement, and Vinsant taking a precautionary appeal to prevent the decree in favor of Federal Insurance Company from being final in the event Rudder's appeal was sustained.

The material facts are not in dispute. The record shows that on October 23, 1969, the defendant, Rudder Construction Company, Inc., entered into a construction contract, as general contractor, with Southeastern Development Corporation to construct a low-rent housing project in Knoxville for a total price of $4,300,000.00 The project was to be constructed in two phases, the first phase, consisting of "152 dwelling units and management and maintenance building," was to be substantially completed before work began on the second phase which consisted of "218 dwelling units."

Under Article six of the contract, provision was made for the submission by Rudder to the architect of applications for payments and for payments to Rudder by Southeastern by the tenth day of each month of ninety percent (90%) "of the proportion of the contract properly allocable to labor, materials and equipment incorporated in the work and ninety percent (90%) of the Contract Sum property (sic) applicable to materials and equipment suitably stored in the site, or at some other location agreed upon in writing by the parties, up to the first (1st) day of that month . . ." The contract incorporated by reference the plans, drawings and specifications for the project, certain addenda, and "General Supplementary and other Conditions," including the American Institute of Architects' Document A–201.

On November 26, 1969, Rudder entered into a subcontract with Vinsant for the mechanical work required for the project. The total subcontract price of $460,000.00 was divided between "Phase #1", $207,000.00, and "Phase # 2," $253,000.00. The subcontract required that the subcontractor assume "towards the Contractor any and all obligations and responsibilities applicable to the Subcontractor's work which by the foregoing documents the Contractor assumes toward the Owner." Section 2 of the subcontract obligated the general contractor to pay the $460,000.00 total sum and for "partial payments" to the subcontractor each month "in an amount equal to 90% of the value of work and materials incorporated in the construction and/or materials delivered to the site of the work by the Subcontractor, as estimated by the Architect or Engineer . . . but such partial payments shall not become due to the Subcontractor until ten days after the Contractor receives payment for such work and materials from the Owner." It was further stipulated in this payment provision of the subcontract that "No partial payment to the Subcontractor shall operate as an approval and acceptance for work done or materials furnished under this Subcontract."

On December 11, 1969, Vinsant purchased copper tubing to be used in performance of the subcontract. Shipment was made direct from the supplier, Wolverine Tube Company, Birmingham, Alabama to Vinsant at the jobsite. On receipt of the shipment, Vinsant stored the tubing in one of its trailers located in the area on the jobsite which had been set aside for Vinsant's use by the general contractor. Previously, Vinsant had fenced the area, so that it could be kept locked. On December 24, 1969, Vinsant submitted to Rudder the estimate required by the partial payment provision of the subcontract showing the cost of material Vinsant had purchased to date. The estimate included the value of the copper tubing. Rudder, then, included Vinsant's estimate with his own and that of other subcon-

tractors and filed an estimate with the Southeastern Development Corporation for payment. On January 18, 1970, Vinsant's foreman discovered that the copper tubing had been stolen. Neither estimate had been paid at the time of the theft, but both were paid shortly after the first of February 1970. Subsequently, Vinsant purchased additional tubing in order to complete the subcontract. Rudder refused to pay the cost of the additional tubing, which would be over and above the contract price for the work to be done by Vinsant.

The chancellor concluded title passed from Vinsant to Rudder "upon delivery [of the materials] to the jobsite" and that Rudder was liable to complainant, on an open account, for payment of materials purchased by Vinsant to replace the stolen material.

■ Unless provided otherwise, by contract, materials furnished by a subcontractor generally remain his property until they are affixed to the land of the owner or are delivered to, and accepted by, the owner as his property. See Mainland v. Alfred Brown Company, 85 Nevada 654, 461 P.2d 862; Collins v. Post, 227 Or. 299, 362 P.2d 325; 17A C.J.S. Contracts § 516.

In Mainland v. Alfred Brown Company, supra, an electrical subcontractor sought to recover from the general contractor the value of electrical equipment and materials delivered to the jobsite and destroyed by fire before the materials had been installed in the building under construction. In denying recovery, the court pointed out:

"The subcontract was for labor and materials to be incorporated into a building and was not a contract of sale. [citing cases]. Therefore, sales concepts regarding the passing of title and risk of loss are inapposite. One who contracts unqualifiedly to erect a structure for a stipulated price enters into an entire contract to complete such work and must bear the losses resulting from its accidental destruction before completion un-

less the contract stipulates that he will not be responsible for losses occurring in such manner. Collins v. Post, 227 Or. 299, 362 P.2d 325 (1961); Bianchi v. Maggini, 17 Nev. 322, 332, 30 P. 1004 (1883). A subcontractor is in the same legal position with regard to his portion of the construction job. Collins v. Post, supra. Since the parties did not, by contract, shift the risk of loss, that risk remained with the subcontractor."

■ In the instant case counsel has not cited us to any contractual provision providing for the transfer of title to the general contractor, or to the owner on delivery to the jobsite of materials purchased by a subcontractor for use in performing his subcontract. Neither do we find any evidence that the materials, later stolen, were delivered to, and accepted by, either the general contractor or the owner as his property prior to the theft of the materials. It follows then that title to the materials and the consequent risk of loss by theft, remained with the subcontractor, Vinsant.

The policy of insurance issued by Federal Insurance Company to Vinsant was in force at the time of the theft of the materials. The "Contractor's Equipment Floater" included in the policy insured property of Vinsant intended for installation in a building under construction "from the time such property becomes at risk of the Insured and covers continuously thereafter during transit, while awaiting installation and during installation . . ." Liability for loss of materials at "any one installation site" or "at any one temporary storage location awaiting installation" is limited to $35,000.00. The policy provides for a $50.-00 deductible for each claim.

■ The chancellor found the value of the copper tubing at the time of the theft was $6,695.24. This was the amount complainant testified it would have cost him to replace the copper if he had purchased it in Knoxville at the time of the loss. Complainant testified further that the cost figure given was just a local figure and that

the pipe, even at that time, "probably could have been bought from Southern Pipe cheaper." Complainant subsequently did purchase the replacement tubing from Southern Pipe at a total cost of $5939.74. We recognize the market cost of copper tubing fluctuates, but are of the opinion that the cost of copper tubing bought to replace that stolen is the more accurate gauge of the loss suffered by Vinsant by theft and the liability of Federal Insurance Company to Vinsant under its policy of insurance.

The decree of the chancellor is reversed. A decree will be entered in this court awarding Vinsant Plumbing and Heating Company Inc., a recovery against the Federal Insurance Company in the amount of $5889.74, which is the value of the copper tubing stolen less the $50.00 deductible. Vinsant's suit against the Rudder Construction Company, Inc. is dismissed. Costs incident to the appeal are adjudged against Federal Insurance Company.

PARROTT and SANDERS, JJ., concur.