Argued October 16, reversed in part; affirmed in part
November 7, 1951

NORSWING and RANKIN *v.* LAKELAND FLYING
SERVICE, INC., and NEER

237 P. 2d 586

*Norman L. Easley,* of Portland, argued the cause for appellant. With him on the brief were Griffith, Peck, Phillips & Coughlin, of Portland.

*William C. Ralston,* of Portland, argued the cause and filed a brief for respondents.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, WARNER and TOOZE, Justices.

TOOZE, J.

This is an action of assumpsit brought by Robert S. Norswing and Shirley Rankin, executrix of the estate of J. G. (Tex) Rankin, deceased, copartners, doing business under the name and style of Rankin

Aviation Industries, as plaintiffs, against Lakeland Flying Service, Inc., a corporation, and Jack C. Neer, doing business as Jack C. Neer Co., as defendants, to recover the reasonable rental value of an airplane, also for necessary repairs to such airplane. The case was tried to the court without a jury. Findings of fact, conclusions of law, and judgment were entered in favor of plaintiffs against both defendants. Defendant Jack C. Neer appeals.

Plaintiffs, hereafter referred to as "Rankin," were engaged in the business of selling, servicing, and renting airplanes and were distributors in Oregon, Washington, Northern Idaho and British Columbia, of a particular type of airplane known as Ercoupe. Rankin maintained an office at Vancouver, Washington. Defendant Lakeland Flying Service, Inc., hereafter referred to as "Lakeland," was a corporation with its principal place of business located at Klamath Falls, Oregon. It was engaged in the same general type of business as Rankin and was a dealer for Ercoupe planes. It also conducted a flying school. Defendant Jack C. Neer, hereafter referred to as "Neer," was and is an independent insurance adjuster doing business under the assumed name of Jack C. Neer Co., with offices in Portland, Oregon. American Aviation Underwriters is a group of insurance companies engaged in writing aviation insurance. Cravens Dargan & Co., of Portland, Oregon, were managing agents for the insurance group and, as such, had written a policy of aviation insurance in the Ohio Casualty Insurance Company, one of the members of American Aviation Underwriters, covering the operations of Lakeland.

On January 15, 1947, Rankin sold an Ercoupe plane numbered 3492H to Lakeland, which plane is hereafter referred to as "first plane." On or about March 1,

1948, the first plane was completely wrecked. Immediately thereafter, Neer was directed by Cravens Dargan & Co. to adjust the loss on behalf of Ohio Casualty Insurance Company and its assured, Lakeland. The policy of insurance carried a provision that it was not to apply "(d) while the aircraft is being operated in violation of the provisions of the Civil Aeronautics Administration with respect to the pilot * * * or to the Airworthiness Certificate." In the absence of knowledge to the contrary, Neer, at the time he commenced adjustment of the loss, assumed that the plane had an airworthiness certificate.

Under the terms of the policy, when a complete loss occurred, the insurance company had two choices in adjustment and settlement. It could pay the assured cash for the value of the plane or, in lieu thereof, secure a suitable replacement, which means replacement by a plane equal to the one lost and suitable to the owner.

Lakeland, in order to continue its business, needed a plane to replace the one lost and desired replacement rather than cash. One Jeff Hayes, an insurance adjuster representing Neer, undertook to locate such a plane. He found an Ercoupe similar to the first plane at plaintiffs' establishment in Vancouver. This Ercoupe will hereafter be referred to as "second plane."

On April 3, 1948, officers of Lakeland went to Vancouver to view the second plane, were satisfied with it, and entered into an arrangement for its purchase. In these negotiations Collins A. Reed, the sales manager for Rankin, represented plaintiffs. Hayes, representing Neer, was present.

Rankin had knowledge at the time that Neer was engaged in adjusting the loss on the first plane as an adjuster for an insurance company, and that the adjustment had not been completed.

As the result of the negotiations on April 3, a written agreement was entered into between Lakeland, represented by E. L. Payne, one of its duly authorized officers, and Rankin, represented by the said Reed.

The agreement reads as follows:

"April 3, 1948

"THIS AGREEMENT entered into between E. L. Payne and partners/dba Lakeland Flying Service, Klamath Falls, Oregon and Rankin Aviation Industries, Vancouver, Washington

"Rankin Aviation Industries agrees to release to Lakeland Flying Service Ercoupe, Serial No. 3571, NC-2946H, pending completion of insurance adjustment by the Jack C. Neer Company, Portland, Oregon, for the loss of Ercoupe, Serial No. 4117, NC-3492H.

"The full purchase price of this Ercoupe will be $2,050.00, of which sum Lakeland Flying Service shall be responsible until this sale is consummated.

"Rankin Aviation Industries
BY (Sgd.) C. A. Reed
TITLE  Salesmanager
Lakeland Flying Service
BY (Sgd.) E. L. Payne
TITLE  Vice Pres.  "

Lakeland thereupon took possession of the second plane and flew it to Klamath Falls, where it was thereafter used by Lakeland in its business. Late in June, 1948, this second plane was involved in a wreck, but it was not damaged to such an extent that it could not be satisfactorily repaired. Neer was directed by the insurance company to adjust the loss on this plane. In investigating the loss on the second plane, Neer, through his agent Hayes, discovered that the first plane did not have an airworthiness certificate at the time it was wrecked. This was a complete defense

under the policy as to payment for any loss on that plane; therefore, liability was denied by the insurance company, and that loss was never paid. However, the evidence discloses that the policy of insurance did cover the loss occasioned by wreck of the second plane. Neer immediately notified Rankin and Lakeland that there would be no settlement for loss on the first plane.

As to the second plane, Neer proceeded to arrange for the repair thereof at the expense of the insurance company under its policy. The first repairs made were unsatisfactory, and, finally, at Neer's direction, the plane was taken to plaintiffs' place of business in Vancouver and there repaired. The reasonable value of those repairs is the sum of $270.48.

Although Rankin knew that, in all the foregoing transactions Neer was acting in his capacity as an independent insurance adjuster, and not individually, nevertheless, at no time did Neer inform Rankin as to the name of his principal, the insurance company, nor did Rankin secure the information elsewhere.

It appears that Lakeland failed financially, and, eventually, Rankin took possession of the second plane, the agreed purchase price therefor not having been paid.

In plaintiff's first cause of action it is alleged:

"That on or about the 3rd day of April, 1948, the plaintiffs, at the special instance and request of the defendants, and each of them, furnished to the defendants an Ercoupe airplane, NC 2946 H, for the special use of the defendant Lakeland Flying Service, Inc., for which rental and use the defendants promised and agreed to pay to the plaintiffs a reasonable rental."

Plaintiffs then demanded judgment for the sum of $1533.32, alleged to be such reasonable rental value

for the period of time commencing April 3, 1948, and terminating November 20, 1948. Their second cause of action demands the sum of $270.48, for and on account of repairs to the second plane by Rankin.

Lakeland defaulted, but Neer answered, denying liability.

■ Plaintiffs contend that, because the sale was not finally consummated, the defendants are liable for the reasonable rental value of the plane upon the theory of an implied contract in fact. As concerns Lakeland, this contention is sound. *Vogler v. Webb,* 181 Or. 377, 182 P. 2d 361.

Although plaintiffs admit they knew Neer was an independent insurance adjuster, and that he was acting as agent for an insurance company in the transactions mentioned, nevertheless, they claim that because he failed to disclose to them the name of his principal, he rendered himself personally liable on the implied contract for the payment of reasonable rental.

However, insofar as plaintiffs' first cause of action is concerned, we need not discuss the legal principles involved in Rankin's contention as regards Neer's liability. That matter is decisively determined by the written agreement above set forth.

Reed, who entered into the agreement for Rankin and carried on the negotiations leading up to it, testified:

"Q Who contacted you originally about replacement?

"A Well, as I remember it I believe Mr. Jeff Hayes of the Jack C. Neer Company.

"Q Go ahead.

"A And this meeting was held in our office and Mr. Hayes as representative of Neer Company was very helpful and very desirous of getting these boys their airplane so they could go

back to work, and we discussed the replacement airplane that we had there, and as I remember it *the agreement was made up between ourselves and Lakeland Flying Service* with his approval pending the signing of the proof of loss for the original airplane that had been damaged or washed out. (Italics ours.)

"* * * * *

"Q Well, you certainly didn't intend to sell it to Jack Neer?

"A No, that is right.

"Q And it wasn't for the use of Jack Neer, isn't that correct?

"A That is correct.

"* * * * *

"Q It wasn't your understanding that Jack Neer was to use that plane, isn't that correct?

"A That is correct.

"* * * * *

"Q And in any event you knew that Jack Neer was attempting to adjust a loss for the Lakeland Flying Service for an insurance company, you knew that?

"A That is right."

Under this written agreement the second plane was released and delivered to Lakeland Flying Service, not to Jack C. Neer Co. It was released to Lakeland "pending completion of insurance adjustment." The full purchase price was to be $2,050, for which sum Lakeland was to be responsible, not the Jack C. Neer Co., nor the insurance company, "until this sale is consummated." The sale was not then complete. Its final consummation, i. e., the payment of the purchase price, awaited the final adjustment of loss on the first plane.

Here is an express written agreement between plaintiffs and defendant Lakeland respecting the sale

and delivery of the second plane. It is unambiguous and complete on its face. Neer is not named as a party thereto. It is obvious that the parties did not intend that Neer should be a party, for had that been the intention, he would have been named, and Hayes, as his agent, would have signed for him, and there is no substantial evidence in the record to support the finding that Neer was a party to the contract.

■ As shown above, plaintiffs pleaded an express agreement between themselves and both defendants respecting the rental and use of this plane. No such agreement was established by the evidence. The only express contract produced was that above mentioned. As previously stated, that agreement relates exclusively to the sale and purchase of the plane in question, not to its rental. Under that contract Lakeland was the purchaser and took delivery and, by its express terms, was held responsible for the purchase price. It is immaterial to the issues now under discussion that both Lakeland and Rankin expected payment of the purchase price to be made out of the proceeds received by Lakeland from the anticipated settlement of loss for the first plane. The contract of the insurance company was with Lakeland, not with Rankin; therefore, whatever obligation, contractual or otherwise, Neer, as an agent of an undisclosed principal, may have had, was owed to Lakeland only. When liability on the insurance policy was denied by the insurer, and Lakeland failed to pay the purchase price as agreed, the contract was terminated; in effect, there was a rescission by Rankin. Lakeland's liability for the reasonable rental value during the time it had the use of the plane, upon the theory of an implied contract, arose solely because of this rescission of the express agreement of sale and purchase. 17 C.J.S.,

Contracts, 322, § 5; *Vogler v. Webb,* supra. Neer, not having any liability under the written contract, is not liable for anything directly flowing therefrom, nor from its rescission by Rankin.

■ There is no competent evidence in the record to support the findings of fact, conclusions of law, and judgment entered against defendant Neer as to plaintiffs' first cause of action. Plaintiffs' first cause of action should have been dismissed as to said defendant.

Plaintiffs' second cause of action stands upon an entirely different footing. It will be recalled that the second plane was covered by insurance. Defendant Neer engaged in the adjustment of the loss as the agent of the insurance company. As such adjuster, he authorized and directed the repairs that were made. He thereby subjected himself to liability therefor, having failed to disclose to plaintiffs the name of his principal. There is substantial evidence that, at most, he made a partial disclosure only; that is to say, he disclosed merely that he was representing an insurance company. That was not sufficient to relieve him of personal liability upon the contract for repairs.

■ In Restatement of the Law, Agency, 712, § 321, the rule is stated thus:

"Unless otherwise agreed, a person purporting to make a contract with another for a partially disclosed principal is a party to the contract."

In 2 Am. Jur., Agency, 316, § 404, it is stated:

"A person acting as agent for another is individually liable if, at the time of making the contract, he fails to disclose his agency, regardless of whether or not he was authorized to execute the contract. This rule applies to a contract made by one known to be acting merely as an agent if the identity of his principal is not disclosed. *The disclosure of*

*an agency is not complete for the purpose of re-
lieving the agent from personal liability unless it
embraces the name of the principal;* without that,
the party dealing with the agent may understand
that he intended to pledge his personal liability and
responsibility in support of the contract and for
its performance. In such case, the agent is subject
to all the liabilities, express or implied, created
by the contract, in the same manner as if he were
the principal in interest.'' (Italics ours.)

■■ Of course, there was a dispute between the
parties as to whether defendant Neer made a full dis-
closure of his agency. He claimed that he did. The evi-
dence was to some extent conflicting. The findings of
fact of the trial court in a law action have all the force
and effect of a verdict of a jury, and this court is bound
thereby if there is substantial evidence in the record
to support them. There is substantial evidence in the
record which, if believed, will support the findings
of fact of the trial court respecting plaintiffs' second
cause of action as against both defendants. In arriving
at its ultimate conclusions upon the facts, it was the
court's exclusive function to determine all disputes
in the testimony. We have no authority to interfere
with such determination.

The judgment is reversed as to plaintiffs' first
cause of action against the defendant Neer; otherwise,
the judgment is affirmed.