LOOMAN REALTY CORP., PLAINTIFF-APPELLANT, v. THE BROAD STREET NATIONAL BANK OF TRENTON, DEFENDANT-RESPONDENT.

LOUIS GRAFF AND EMANUEL LERMAN, PLAINTIFFS-APPELLANTS, v. THE BROAD STREET NATIONAL BANK OF TRENTON, DEFENDANT-RESPONDENT.

Argued April 4, 1960—Decided May 23, 1960.

462

464

*Mr. Richard J. Hughes* and *Mr. Nathan N. Schildkraut* argued the cause for the plaintiffs-appellants (*Messrs. Kahn, Schildkraut & Levy,* attorneys).

*Mr. John J. Connell* argued the cause for the defendant-respondent (*Messrs. Wicoff and Lanning,* attorneys).

The opinion of the court was delivered by

BURLING, J. The Looman Realty Corp. (hereinafter referred to as Looman) filed suit in the Superior Court, Chancery Division, to compel the Broad Street National Bank of Trenton, a national banking corporation, to specif-

ically perform an alleged contract of sale of premises, owned by the Bank, located on the southwesterly corner of East State and Montgomery Streets and commonly known as the Broad Street National Bank Building. The suit also sought to restrain the Bank from disposing of or encumbering the premises in question, and sought damages for the breach of the alleged contract of sale. After the defendant Bank filed its answer, both parties submitted motions for summary judgment in their behalf together with affidavits in support thereof. The trial court granted defendant's motion for summary judgment and denied plaintiff's on the grounds that the contract of sale did not satisfy the Statute of Frauds. Thereafter a motion was made to include Louis Graff and Emanuel Lerman as plaintiffs in the above suit and to amend the order granting defendant's motion for summary judgment to make it applicable to the proposed individual plaintiffs. This motion was denied by an order dated June 22, 1959. The following day Looman filed a Notice of Appeal with the Superior Court, Appellate Division, from the trial court's order granting defendant's motion for summary judgment and denying Looman's motion. Graff and Lerman then filed a complaint in the Superior Court, Chancery Division, seeking the same relief requested by Looman in its suit, from the same defendant, and on the basis of the same contract, except that the performance was to be made to Graff and Lerman. Defendant immediately filed a motion for summary judgment which was granted. Graff and Lerman appealed from this determination, which appeal was consolidated with the Looman appeal by order of the Superior Court, Appellate Division. While the cause was pending there, however, and prior to argument, we certified it on our own motion.

It appears from the affidavits that Louis Graff, Emanuel Lerman, and Emily Lerman, Emanuel's wife, are the sole officers, directors, and stockholders of the Looman Realty Corp., filling the offices of President, Secretary-Treasurer, and Vice-President respectively. Graff was contacted by

Charles N. Schragger, a director of the defendant Bank and a member of its building committee who apparently is also a real estate broker and the president of a firm dealing in real estate transactions, concerning the possible purchase of the premises in question by Graff. Graff manifested interest therein and a meeting between Schragger, Graff, and apparently Lerman was arranged and held, at which different asking prices, counter-offers and respective terms were discussed. As a result of this meeting, another meeting was arranged and attended by Graff and Lerman, and by Schragger, Scott M. Fell, President of the Bank, Charles J. Weiser, Vice-President of the Bank, Raymond L. Steen, Cashier, and Samuel L. Conard, an officer and director of the Bank. Many details of the proposed transaction were discussed at this meeting, but apparently no definite conclusions were reached at this time. Shortly thereafter, Graff and apparently Lerman met again with Schragger. At this time Graff gave Schragger his personal check for $10,000 drawn to the order of the Bank as a deposit to be applied against the purchase price which check apparently was submitted to and retained by the Bank. Five days later, Graff, Lerman, and Schragger again met, and at this time a letter was prepared by Schragger transmitting to the Bank the terms of the alleged offer. This letter, dated January 14, 1959, was directed to Fell as President of the Bank. It was signed: "Chas. N. Schragger, Inc. Chas. N. Schragger President." It was also signed: "Approved: Louis Graff Emanuel Lerman." The letter included the statement: "The offer of purchase is from a company owned by Mr. Louis Graff and Mr. Emanuel Lerman * * *." Graff claims in his affidavit submitted in connection with the Looman motion for summary judgment that he was informed by Schragger on January 20, 1959, that the alleged offer had been accepted by the Bank's Board of Directors and arrangements were made for the preparation of a formal contract of sale to embody the terms of the agreement. Fell's affidavit has attached to it a copy of the resolution adopted by the

Bank's Board of Directors approving the terms of the letter in question. On February 3, 1959, however, Schragger's brother, acting for Schragger in the latter's absence, communicated with Lerman and told him that the Bank had decided not to complete the agreement previously decided upon and that the transaction was terminated. It appears from Graff's affidavit that the Bank had found another purchaser with whom, for reasons which do not appear in the record, they preferred to deal. The Looman complaint was filed shortly thereafter.

This complaint is in three counts. The first count alleges that the letter of January 14 was "an offer in writing * * * submitted by Louis Graff and Emanuel Lerman on behalf of the plaintiff," alleges the Bank's resolution of acceptance and acceptance of Graff's check, and the refusal to complete the transaction and the return of the check. The second count repeats the allegations of the first count and alleges that the Bank informed plaintiff that it will convey the premises to a third party, and seeks a restraint preventing the Bank from doing this or in any manner conveying or encumbering the premises. The third count repeats the allegations of the first and second count and seeks $1,000,000 damages from defendant if specific performance is rejected. The complaint filed by Graff and Lerman individually is virtually identical to the Looman complaint except that it states that the letter of January 14, 1959 was "an offer in writing * * * made by Louis Graff and Emanuel Lerman * * *."

Defendant's answer to the Looman complaint admits receipt of the January 14 letter, the retention of the check and the resolution "addressed to the proposal of January 14," but denies that the January 14 letter was an offer, denies the existence of a contract, and claims a lack of information sufficient to form a belief as to the other allegations of the complaint. As separate defenses to the first count, defendant Bank states the following: (1) that the January 14 letter was not an offer; (2) that the Bank's resolution was not

an acceptance; (3) that there is no memorandum in writing, signed by the party to be charged therewith, sufficient to comply with the Statute of Frauds, *R. S.* 25:1–5(*d*); (4) that retention of Graff's check is not such part performance as to remove the transaction from the operation of the Statute; (5) assuming, *arguendo,* an offer and acceptance, the latter was never communicated to the offeror; (6) that there has been no sufficient "meeting of the minds" to allow, of the creation of contractual relations; (7) that the parties, if such they were, contemplated further agreement by way of a subsequent instrument to embody essential terms; (8) that specific performance should not be allowed because the bargain has not been completed and its terms are not sufficiently definite. Besides all of the above, defendant adds as another separate defense to the second count of the Looman complaint that the restraint would be improper because plaintiff is not entitled to primary equitable relief. As separate defenses to the third count, defendant includes by reference the first seven separate defenses to the first count. The defendant Bank filed no answer to the Graff and Lerman complaint but moved immediately for summary judgment.

The trial court, in connection with the Looman suit, granted defendant's motion for summary judgment and denied plaintiff's on the ground that the offer of January 14, 1959 was insufficient to satisfy the Statute of Frauds, *R. S.* 25:1–5(*d*), more particularly in that the "memorandum on its face discloses that a party signing it is signing in a representative capacity as agent but fails to disclose the identity of his principal for whom he is acting," citing *Follender v. Schwartz,* 107 *N. J. Eq.* 451 (*E. & A.* 1930). The trial court granted defendant's motion for summary judgment in the Graff and Lerman suit on the ground that the prior litigation constituted an estoppel in that the parties are taking a position inconsistent with that which was taken in the Looman suit.

## I.

First we will deal with the questions raised by the trial court's granting defendant's and denying plaintiff's motion for summary judgment in the Looman case. Then we will proceed to consider the appeal in the Graff and Lerman suit. Throughout we must be mindful that plaintiff appeals from an order granting defendant summary judgment and, therefore, to affirm this result it must palpably appear that "there is no genuine issue as to any material fact challenged."

The trial court granted defendant's motion for summary judgment in the Looman suit on the basis of *Follender v. Schwartz*, 107 *N. J. Eq.* 451 (*E. & A.* 1930), the factual analogy between that and this case being that the contracts were required by the Statute of Frauds to be in writing and that in both cases one of the parties identified in the memorandum containing the terms of the contract was apparently an agent whose principal was not named therein. In the *Follender* case, the body of a written contract for the sale of land did not identify the vendors and it was signed "on behalf of the vendors" by "Samuel Pesin, Agent." It does not appear that the vendees were otherwise aware of the vendors' identities, but it was stated to be a requirement of the Statute of Frauds that the writing must describe the essential elements of the agreement, including the identities of the parties to it. The court stated:

"* * * The rule seems to be that, where the contract on its face appears to be one between two parties who are named therein, it may be enforced, and proof, *aliunde*, may be introduced as to the principal, if one of the parties, in truth, acted as an agent. But, where the memorandum discloses upon its face that it is signed by one of the apparent parties as an agent for an undisclosed principal, then the memorandum does not conform to the requirements of the fifth section of our statute and is insufficient." 107 *N. J. Eq.*, at *page* 452.

Since the writing disclosed that the agreement was made "by one of the apparent parties as an agent," the contract

was not enforced. In the instant case, neither the letter of January 14 nor the Bank's resolution of January 19 expressly named Looman as the vendee. The letter of January 14 did disclose that the alleged offer was "from a company owned by Mr. Louis Graff and Mr. Emanuel Lerman" and was signed simply "Approved, Louis Graff, Emanuel Lerman." The trial court concluded from this that the *Follender* case was "on all fours" with the instant case.

The rule applied in the *Follender* case, *i. e.*, that the name of an agent who expressly acts in a representative capacity does not satisfy the Statute of Frauds requirement that parties to a contract within the Statute must be identified in a memorandum evidencing the agreement, is applied in many jurisdictions. *Irvmor Corp. v. Rodewald, 253 N. Y. 472, 171 N. E. 747, 70 A. L. R. 192 (Ct. App. 1930); Perlman v. Bartom Realty Corp., 97 N. Y. S. 2d 699 (Sup. Ct. 1950); Ades v. Supreme Lodge, Order of Ahepa, 51 N. M. 164, 181 P. 2d 161 (Sup. Ct. 1947); 49 Am. Jur., Statute of Frauds,* § 417, *n.* 1; 37 *C. J. S. Frauds, Statute of* § 193 b, *note* 46; *Annotations, 23 A. L. R. 932, 934 (1923), 138 A. L. R. 330, 331 (1942).* It has, on the other hand, at times been considered and rejected. *Dodge v. Blood, 299 Mich. 364, 300 N. W. 121 (Sup. Ct. 1941); 49 Am. Jur., Statute of Frauds,* § 417, *n. 7–9; Annotations, 23 A. L. R. 932 (1923), 138 A. L. R. 330 (1942).* In the *Follender* case, the Chancery Court, the opinion of which was adopted by the Court of Errors and Appeals, stated that "this subject is somewhat shrouded in metaphysical nicety of distinction" and in the Chancery Court emphasis was laid upon its *stare decisis* aspect and the case turns thereon. It is notable that in the decisions prior to *Follender,* very little space is devoted to support the justice or need for the adoption of such a doctrine. For this reason the rule has many critics, 2 *Corbin, Contracts* § 500 (1951); *Mechem, Agency,* §§ 320–321 (*4th ed.* 1952); *Comment, 42 Colum. L. Rev. 475 (1942),* and has been rejected by the *Restate-*

*ment. Restatement, Contracts,* § 207(a) (1932). *Cf. Restatement, Agency 2d,* § 153 (1958).

The rule appears to us to be without support in logic and policy. In developing the unacceptability of this rule, it is first necessary to sketch some other well-established collateral principles of law.

 It is recognized that a written memorandum evidencing a contract within the Statute of Frauds which identifies the parties to the agreement will, if otherwise sufficient, satisfy the statute. *Johnson & Miller v. Buck,* 35 *N. J. L.* 338 *(Sup. Ct.* 1872) ; *Restatement, Contracts,* § 207(a) (1932). This is true even if one of the parties is acting as an agent for an undisclosed principal, *i. e.,* where the other contracting party has no notice that the agent is acting in another's behalf, *Restatement, Agency 2d,* § 4(3) (1958), in which case the Statute of Frauds does not bar the principal's enforcing the contract, and, once he is discovered, having it enforced against him, even though he is not identified in the memorandum evidencing the agreement. *Yates v. Repetto,* 65 *N. J. L.* 294, 297 *(E. & A.* 1900) ; 2 *Corbin, Contracts,* § 500, *p.* 694 (1951) ; 2 *Williston, Contracts,* § 569, *p.* 1625 *(Rev. ed.* 1936). The reason is that an agent acting for an undisclosed principal is himself a party to the contract and is liable on it, *Restatement, Agency 2d,* § 322 (1958), and if the agent acting in such a capacity and the other contracting party are identified in a memorandum otherwise evidencing the agreement the Statute of Frauds is satisfied. The principal's identity may be revealed by parol evidence inasmuch as the effect of such evidence would not be to vary the terms of the contract, since the agent is yet a party to it, but merely to add an additional party. *Mertz v. Hubbard,* 75 *Kan.* 1, 88 *P.* 529, 8 *L. R. A., N. S.,* 733 *(Sup. Ct.* 1907). Thus it is apparent that whether the Statute of Frauds is satisfied where the principal is not identified in a memorandum evidencing the agreement depends on whether the agent is or is not a party to the contract. In the former situation, the principal may

be shown to be a party by parol evidence; in the latter case, such evidence is not permissible, and not because of the force of the parol evidence rule, but rather because of an application of the Statute of Frauds.

■■ It is demonstrable, however, that if the Statute of Frauds does not render unenforceable an agreement wherein the agent for an undisclosed principal and the other contracting party are identified in a memorandum evidencing the agreement, the Statute should not deny enforcement of a contract wherein the memorandum evidencing the agreement identifies only an agent who appears to be acting in a representative capacity and not the principal himself. First, it is a sound rule which allows an undisclosed principal to be identified by parol evidence when the agent acting in his behalf is identified in the memorandum evidencing the agreement. The parol evidence rule admittedly is no bar, and evidence *aliunde* the contract tending to disclose the identity of the principal is not by its nature so uncertain or unreliable as to warrant its rejection. See 2 *Corbin, Contracts,* § 500, *p.* 692 (1951). This being so, evidence of the same nature is no less reliable when the agent expressly acts in a representative capacity than when he acts apparently on his own account but actually on behalf of an undisclosed principal. And since the contract is enforceable by the principal in the latter case, it should be enforceable by him in the former. *Mechem, Agency,* § 321 (*4th ed.* 1952). "The description and signature of the agent are equally defective as an identification of the principal, whether the agent purports to bind himself to the contract or not." 2 *Corbin, Contracts,* § 500, *p.* 694 (1951). The better rule, therefore, is that a memorandum evidencing the agreement which identifies an agent is sufficient to identify the principal, and we adopt that rule. *Restatement, Contracts,* § 207(a) (1932). *Cf. Restatement, Agency 2d,* § 153 (1958). In *Dodge v. Blood,* 299 *Mich.* 364, 300 *N. W.* 121 (*Sup. Ct.* 1941), the court reasoned away objections to this conclusion in the following manner:

"\* \* \* Sufficiency depends, we are informed, upon the memorandum's stating all the elements of some contract. A memorandum which names but one obligor, and on the other part declares there is an unnamed obligor, on whose behalf an unbound agent signs his own name, never satisfies the test laid down. A memorandum slightly different, which names two obligors, but designates one as agent for an unnamed principal, alternatively bound, would seem to satisfy the test. But we are persuaded, after consideration of the applicability of the principles of substantive agency law stated in the next preceding paragraph, that the second of the two supposed memoranda is really no better than the first, judging them by Justice Younger's test, which we adopt only for the purpose of argument. It is true that the second memorandum begins its history by stating the elements of (including two parties to) a contract, namely, the contract between the third person and the agent. No one would question the sufficiency of the second memorandum as evidence of that contract. But should the third person elect to discard that contract, and sue upon another, namely, the contract between himself and the principal, the theory of his suit must be that the latter contract stands, the former disappears. We are aware that his election is not final and irrevocable until he has obtained judgment against the principal, but while he pursues his suit against the principal, he cannot be permitted to regard the alternative contract with the agent as still subsisting. To hold the second memorandum sufficient to justify admission of parol evidence to turn it into a memorial of the contract with the principal, it is necessary to ignore the fact that under the theory upon which the third person has brought suit, there is no subsisting contract of which the memorandum can be an adequate memorial, unless parol evidence be first admitted to add an unnamed obligor, and, by the test, the sufficiency of the memorandum is supposed to be a condition precedent to the admission of parol evidence, rather than the result of the admission of such evidence. We do not endeavor to criticize admission of parol evidence in cases involving memoranda of the second type; we do criticize rejection of such evidence in cases involving memoranda of the first type, because we believe that the rule distinguishing between the two types of memoranda is unsound.

Rules which lead to such enigmatic anomalies may well intrigue the scholar and adorn his treatises, but serve only to baffle businessmen, who are expected to abide by them, and, in the language of appellant's brief, make 'important rights turn upon an accident of phraseology which bears no relation to the purpose which underlies the statute of frauds.' Parol evidence to identify a partially disclosed principal is no more inherently reliable where the agent-signor once was, but (since the election by the third party to hold the principal) is no longer, bound, than where he was never bound at all. Even judges who feel bound to follow the rules we criticize complain that the 'subject is somewhat shrouded in metaphysical nicety of

distinction' (*Follender v. Schwartz*, 107 *N. J. Eq.* 451, 452, 151 *A.* 55, 56), and we do not propose to join their ranks." 300 *N. W.*, at *pages* 125–126.

Nor do we deem it mandatory to continue to follow a precedent only because the question has been long settled where, as here, the matter is not one wherein the parties have placed just reliance of substantial rights. *Newman v. Borough of Fairlawn*, 31 *N. J.* 279, 288 (1959). The principal effect of the rule of the *Follender* case "was to permit the unjust repudiation of an agreement by a party known to have made it, in a case where there was no danger of successful fraud and perjury." 2 *Corbin, Contracts, p.* 691 (1951). A rule having such an effect should be subject to reconsideration.

██ We conclude, therefore, that the signatures of Graff and Lerman on the letter of January 14 even if made in a representative capacity are an identification of the principal for which they were acting sufficient to satisfy the Statute of Frauds. For this reason, the order of the trial court granting defendant's motion for summary judgment in the Looman case was erroneous. It appears, moreover, that the Looman case is not otherwise determinable by summary judgment, either in favor of plaintiff or against it, for a plenary trial is necessary on the issues of whether the transaction had become sufficiently definite or yet remained in the preliminary negotiation phase, whether the existence of a binding contract was intended to rest upon the execution of a formal contract of sale, whether the defendant actually accepted the alleged offer or whether the acceptance, if actually made, was ever sufficiently communicated to plaintiff. We conclude, therefore, that with respect to the Looman appeal the trial court's order granting defendant's motion for summary judgment was erroneous and is hereby reversed, but that the order denying plaintiff's motion for summary judgment was proper, and the cause is remanded to the Superior Court, Chancery Division, for trial.

## II.

We shall now consider the trial court's order granting defendant's motion for summary judgment in the Graff and Lerman suit. The trial court granted this order on the grounds that Graff and Lerman, in their complaint in the suit they filed in their own behalf, took a position on material facts inconsistent with their affidavits filed in connection with the motions for summary judgment made in the Looman suit. In this connection, the trial court stated:

"I don't see how they can contend in that suit that Looman Realty Corporation was to be the purchaser and now contend that isn't so, that they individually are to be the purchasers of this property.

I question whether the individuals could be held as individuals, the fact that they simply approved of the letter signed by Mr. Schragger when the body of the letter sets forth that the offer of purchase is from a company owned by them."

The contractual status of an agent who signs a contract on behalf of a partly disclosed principal is not exactly clear. In the disclosed principal situation, where the principal's identity is known to the other contracting party and where the agent expressly signs in a representative capacity, the principal, not the agent, is liable on the contract. *Colloty v. Schuman*, 73 *N. J. L.* 92 *(Sup. Ct.* 1905). Nevertheless, an agent acting for a disclosed principal may agree with the other contracting party that the agent also will be a party to the contract. *Restatement, Agency 2d*, § 320 (1958). See *Forst v. Vollick*, 9 *N. J. Misc.* 475 *(Sup. Ct.* 1931). An agent acting on behalf of an undisclosed principal is a party to a contract he signs in such a capacity, whether he intended this result or not. *Sadler v. Young*, 78 *N. J. L.* 594 *(E. & A.* 1910). The principal, if discovered, may also be a party to the contract. *Yates v. Repetto*, 65 *N. J. L.* 294 *(E. & A.* 1900). It also has been held that the agent of a partly disclosed principal, *i. e.*, where the other contracting party knows that the agent is acting in another's behalf but the identity of the

principal is not known, *Restatement, Agency 2d,* § 4(2) (1958), is a party to the contract in the absence of an agreement to the contrary. *Solomon v. New Jersey Indemnity Co.,* 94 *N. J. L.* 318 (*Sup. Ct.* 1920), affirmed 95 *N. J. L.* 545 (*E. & A.* 1921); *Cleary Bros. v. Christie Scow Corp.,* 215 *F.* 2d 740, 743 (2 *Cir.* 1954); *Searl v. Earll,* 95 *U. S. App. D. C.* 151, 221 *F.* 2d 24, 28 (*D. C. Cir.* 1954); *Norswing v. Lakeland Flying Service, Inc.,* 193 *Or.* 91, 237 *P.* 2d 586 (*Sup. Ct.* 1951); *Restatement, Agency 2d,* § 321 (1958).

Thus it appears that, in the partly disclosed principal situation, whether the agent is a party to the contract, *i. e.,* whether the normal rule of liability applies, or is not a party, *i. e.,* whether there has been an agreement altering the effect of the normal rule, depends upon the intention of the parties executing the contract, the agent and the other contracting party. *Tiffany, Agency,* § 124 (*2d ed.* 1924); 1 *Corbin, Contracts,* § 31, at *n.* 61 (1951). This intention, in the case of a contract represented by an integrated writing, must be determined, if possible, from within the four corners of the instrument. *Mechem, Agency,* § 300 (*4th ed.* 1952). If the writing is ambiguous on this point, however, other evidence may be introduced to clarify the parties' intentions. See *Restatement, Agency 2d,* § 323(2) (1958). It is generally held, however, that an agent who signs in a representative capacity but without revealing his principal's identity, unless he expressly disclaims liability, intends to make himself a party to the contract even though it appears that he is acting in another's behalf. *Cleary Bros. v. Christie Scow Corp., supra; Norswing v. Lakeland Flying Service, Inc., supra;* 1 *Corbin, Contracts,* § 31, at *n.* 61 (1951). In this situation, it is the agent's credit which is important, not that of an unknown person or entity, and it may be presumed that the parties themselves, in the absence of a definite showing to the contrary, so intend. See 2 *Williston, Contracts,* § 285, *p.* 336 (*3d ed.* 1959).

In the instant case, it would not seem clear whether Graff and Lerman are parties to the alleged contract capable of suing thereon. Their signatures were placed on the January 14 letter without qualification. The body of the letter states that the offer is "from a company owned by Mr. Louis Graff and Mr. Emanuel Lerman." This could mean, taken in connection with the failure to unequivocally identify the company, that it was intended for the individuals' credit to be relied upon by defendant for performance. On the other hand, it could represent an intent of the individuals, concurred in by the defendant, to disassociate themselves from liability for performance, in which case their standing to enforce the contract is vitiated. The situation requires evidence of the circumstances of the agreement to elucidate the question of the intent of the parties as to the contractual status of the individuals.

It is clear, however, that authorized agents may be full parties to contracts they make on behalf of their principals. As was stated above, such is rebuttably presumed to be the case unless the principal is identified to the other contracting party. This circumstance does not affect, however, the status of the principal himself as a party, even though it is not entirely certain in what circumstances a principal unidentified at the time of the making of the agreement may enforce the contract. See *Seavey, Undisclosed Principals; Unsettled Problems,* 1 *How. L. J.* 79 (1955). It appears, therefore, that the trial court's order granting defendant's motion for summary judgment in the Graff and Lerman suit on the basis of judicial estoppel was erroneous and that the cause must be returned for determination of the intention of the defendant on one hand and Graff and Lerman on the other hand, as to the status of the letter with respect to the contract.

The trial court's order granting defendant's motion for summary judgment in the Looman case is reversed, but its order denying Looman's motion for summary judgment is affirmed, and the matter is remanded to the Superior Court,

Chancery Division, for proceedings not inconsistent with this opinion. The trial court's order granting defendant's motion for summary judgment in the Graff and Lerman case is reversed and that cause is remanded to the Superior Court, Chancery Division, for proceedings not inconsistent with this opinion.

Costs to abide the event.

*For reversal in part*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*Opposed*—None.