PUBLICKER INDUSTRIES, INC. and
Continental Distilling Corporation

v.

ROMAN CERAMICS CORPORATION,
Publicker Industries, Inc., Appellant.

No. 80–2378.

United States Court of Appeals,
Third Circuit.

Argued Feb. 24, 1981.

Decided June 26, 1981.

Harold Cramer, Anthony E. Creato (argued), Jeffrey Cooper, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for appellant.

Thomas P. Preston (argued), Duane Morris & Hecksher, Philadelphia, Pa., Meyer J. Myer, Myer, New, Berlin & Braude, Chicago, Ill., for appellee.

Before ADAMS, ROSENN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This contract action presents the question whether the seller, Roman Ceramics Corporation, must seek breach-of-contract relief from Continental Distilling Corporation, with whom Roman shares a common state of incorporation, or whether, on the contrary, Roman is entitled to full relief from Publicker Industries, Inc., a party whose citizenship is diverse from Roman's. If the former route is necessary, the case must be dismissed for lack of subject matter jurisdiction. If, on the other hand, the latter course is permissible, then the case is properly before the federal courts under 28 U.S.C. § 1332 (1976), and we must address the further question whether the district court awarded Roman the proper measure of damages. Except for a slight modification in the amount of damages awarded, we affirm the judgment of the district court.

Our inquiry must proceed within the confines of our decision in a prior appeal of this same case. *See Publicker Industries, Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065 (3d Cir. 1979). Because the factual background of this case is set out there in some detail, we recount the facts in abbreviated form. In January 1976 Roman, negotiating with individuals who were officials of both Continental and its parent, Publicker, agreed to sell them 40,000 ceramic "liberty bells." [1]

In return Roman was to receive $2.50 per bell. By September, Roman had become unhappy with the buyers' failure to move ahead with the transaction, and failure to provide shipping instructions to deliver the bells.[2] Publicker thereupon entered into settlement negotiations with Roman and paid Roman $40,000 to be applied on account of settlement of the January deal. Some time afterward, however, Publicker called the settlement off and, together with Continental, brought this diversity suit against Roman in federal district court for restitution of the $40,000. Roman counterclaimed for the unpaid balance of the January purchase price. Continental was ultimately dismissed from the suit due to its and Roman's common Delaware citizenship. The district court then entered judgment against Publicker.

### I.

We begin with the liability question. The seeds of furor over this issue were sown by the district court's brief recitation of the theory upon which it originally held Publicker liable on the contract:

I will note for the record that thus far I have spoken of the plaintiffs [Publicker and Continental] interchangeably, and I did that deliberately. I rule that on the present record there is no basis for distinguishing between the two. There is nothing in the record to show that they are indeed separate entities, that they are not alter egos for each other. Because of the way they worked interchangeably throughout this transaction, I treat them as one in the same; and the finding on the counterclaim is against both plaintiffs.[3]

and is not in issue here. *See* 603 F.2d at 1071–72.

---

1. The 40,000 bells to which we refer were "defective" in the sense that although they were originally designed to serve as whiskey bottles, they leaked. Roman had previously shipped Continental 200,000 sound liberty bell-bottles, of the same design, for which Roman has yet to receive $9,864.30 in payment. *See* n.13 *infra*.

2. Roman had already sold some 1,200 bells to outside parties for $3,259. The propriety of those sales was adjudicated on the first appeal

3. Perhaps because the case had proceeded to trial and the merits had been decided before Continental had been dismissed from the case, the parties and the district court had not paid the same attention to theories of Publicker's *individual* liability as they had to Roman's entitlement to recovery against at least one of the two putative "buyers," Publicker and Continental.

On appeal to this court we noted that there was no evidence to support application of the traditional alter ego theory to pierce the corporate veil. 603 F.2d at 1069–70. However, we went on to acknowledge that a legal framework for imposition of liability upon Publicker

might be provided by the principles of agency, in that it might be concluded that Publicker and Continental created mutual agencies in one another with respect to their dealings with Roman. . . .

Under the agency theory, . . . it could be argued that Continental, acting both on its own behalf and under apparent authority from Publicker, bound Publicker as well as itself to the January contract with Roman.

*Id.* at 1070. However, because the district court made no findings under an agency theory and because we could not discern any other ground upon which an alter ego theory could be made applicable to this suit, we remanded "to allow the trial judge to make the necessary findings and to explain the legal underpinnings of his determination." *Id.* at 1071.

Upon remand the parties presented additional evidence to support their theories on the proper scope of Publicker's liability under principles of agency. In light of the additional evidence, the district court resolved the liability question in Roman's favor. It found that the principal actors for the buyer in the transaction were acting as officers, employees, and agents of Publicker rather than Continental. In support of this conclusion, the district court noted that the letters from the various buyer representatives comprising exhibit D–8 were designed to give the reader "the clear impression that Publicker Industries was the main force in this situation." Secondly, the court noted that when Roman demanded some sort of action in response to buyer's nonperformance of the January agreement, it was Publicker that initially shouldered the bur-

den of setting things straight. "[I]f Publicker didn't have an interest in this transaction it doesn't make any sense at all in this abortive attempt to settle the transaction."

The court then suggested that Publicker's interest in the transaction encompassed the entire scope of the relief sought by Roman—the expectation that Roman was seeking to protect in this suit was identical, in economic impact, to the expectation that Publicker had admittedly created in the aborted settlement attempt. Finally, Judge Fullam noted that the original complaint filed by Publicker and Continental for recovery of the $40,000 had expressly alleged that it was Publicker that had agreed to buy the defective bottles, and that had paid the $40,000 on account of the settlement. The complaint also, he noted, had alleged that "Publicker and/or Continental were and are selling Liberty Bells." The judge further observed that plaintiff's pre-trial memorandum of July 13, 1977 set forth that on two occasions, both plaintiffs agreed to buy the defective bottles.

Based on these facts, the court concluded that "it was Publicker which was the moving force throughout." It therefore held that Publicker was directly liable under the contract, rendering it unnecessary "to go into the question of agency." [4] Alternatively, however, the court noted that "at the very least" Publicker was acting as agent for its subsidiary, Continental, "that it had an interest in the transaction and that therefore [it] is liable as principal." Publicker appealed, chiefly on the ground, it seems, that if Continental could have been held liable under the contract (and we tend to believe that it could have), this would perforce exclude liability by Publicker.

The question to be decided now is not whether Continental could have been sued on a contract for the purchase of 40,000 liberty bells from Roman. Rather, the

---

**4.** The court reached this conclusion notwithstanding its finding that Publicker had given instructions to prepare "the actual contract documents to the extent that there were contract documents, namely the invoices and ship-

ping instructions and so forth," to Continental, and that "Continental issued the checks in the payment of the good bottles which were delivered."

question is whether Publicker is liable under such an agreement, either solely or jointly. Although the direct method of inquiry would be to ask whether Publicker was a party to "the contract" (notwithstanding the absence of its name on some of the documents that passed between the parties), we recognized on the earlier appeal that Publicker's contract liability could be deduced as a matter of law from the existence of a putative principal-agent relation between Publicker and Continental. Under such a theory, the sort of findings ordinarily bearing directly on the contract question might have been rendered unnecessary in part. In their stead, the district court could have made findings upon which to predicate a holding that Continental executed the contract for the bells as agent for Publicker. From such a holding, Publicker's liability would have followed as a matter of law.[5] In addition, a further finding that Continental was not liable would not have been inconsistent with such a finding of Publicker's liability. "Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." *Restatement (Second) of Agency [Restatement]* § 320. *See generally Viso v. Werner*, 471 Pa. 42, 369 A.2d 1185 (1977); *Vernon D. Cox & Co. v. Giles*, 267 Pa. Super. 411, 406 A.2d 1107 (1979).[6] However, the additional findings of the district court revealed that Publicker's liability was not to be neatly confined to such a theory.[7] Thus, through the findings developed upon remand, the district court resumed *ab initio* the liability inquiry, bypassing the agency theory as an automatic basis for holding Publicker liable.

■ Before us now is solely the question whether the district court's findings support its conclusion that Publicker bore direct liability on the January contract.[8] Even assuming that for some purposes Publicker is to be characterized as Continental's agent, the opening proviso to *Restatement* § 320 leads us to reject application of Publicker's "either-or" theory of contract liability.[9]

5. *See, e. g.*, Restatement (Second) of Agency (1958) [hereinafter cited as Restatement]:

§ 149. Written Contracts Not Containing Principal's Name

A disclosed or partially disclosed principal is subject to liability upon an authorized contract in writing, if not negotiable or sealed, although it purports to be the contract of the agent, unless the principal is excluded as a party by the terms of the instrument or by the agreement of the parties.

\* \* \* \* \* \*

§ 159. Apparent Authority

A disclosed or partially disclosed principal is subject to liability upon contracts made by an agent acting within his apparent authority if made in proper form and with the understanding that the apparent principal is a party. The rules as to the liability of a principal for authorized acts, are applicable to unauthorized acts which are apparently authorized.

6. Due to the parties' failure to raise any conflict of laws question, we apply the substantive law of the forum (Pennsylvania) on the liability issue as well as the damages issue. *See, e. g., Montgomery Ward & Co. v. Pacific Indem. Co.*, 557 F.2d 51, 58 n.11 (3d Cir. 1977).

7. That is not to say that the evidence adduced on remand was insufficient to support a finding that Publicker created "apparent authority" in Continental to act as its agent in purchasing the bells from Roman. Other courts have noted, when faced with claims that a subsidiary acted as its parent's agent, that "agency control may be easier to establish when a parent-subsidiary relationship is involved." *Beary v. Norton-Simon, Inc.*, 479 F.Supp. 812, 815 (W.D. Pa.1979) (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 419 (9th Cir. 1977)). Furthermore, they have apparently applied this principle independently of the separate inquiry whether to pierce the corporate veil under the "alter ego" theory of corporate ownership. 556 F.2d at 420 n.13.

However, it seems that the district court simply found it unnecessary to make findings relating to Continental's "apparent authority."

8. Publicker does not contend that the district court's findings of fact were "clearly erroneous."

9. *Accord, Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 492 (5th Cir. 1974); *B & M Homes, Inc. v. Hogan*, 376 So.2d 667, 676 (Ala. 1979); *Russello v. Mori*, 153 Cal.App.2d 828, 315 P.2d 343, 346 (1957); *Thilman & Co. v. Esposito*, 87 Ill.App.3d 289, 42 Ill.Dec. 305, 408 N.E.2d 1014, 1020 (1980); *Clark Advertising Agency, Inc. v. Avco Broadcasting Corp.*, 383 N.E.2d 353, 355 & n.2 (Ind.App.1978); *Looman Realty Corp. v. Broad St. Nat'l Bank*, 32 N.J. 461, 161 A.2d 247, 255 (1960); *Roberts, Walsh*

Therefore, we cannot agree with Publicker when it argues that its exclusion from any direct contractual undertaking is the "law of the case." Obviously, an explicit written statement signed expressly on behalf of Publicker would have made the case simple. However, evidence of a more circumstantial nature is also legally sufficient to establish liability.[10]

■ Stripped of the contention that Continental's admitted liability negates Publicker's liability, we believe that Publicker's argument reduces to a mere disagreement with the district court's factual determinations. Although it is true that findings of ultimate, rather than evidentiary, facts are reviewable free of the clearly erroneous rule,[11] Publicker has invoked no authority, and we have discovered none, that would indicate that the district court applied an erroneous legal analysis in arriving at its ultimate conclusion.[12] We find ourselves in agreement with the district court that Publicker's entire course of conduct throughout the negotiation, renegotiation, and partial

performance of the aborted transaction manifested Publicker's agreement to bear direct liability in the anticipated sale. Therefore we affirm the district court's holding that Publicker is liable upon its own direct commitment under the contract.

## II.

We turn to the issue of damages.[13] At the conclusion of the first trial the district court awarded Roman $2.50 per bottle, less offsetting sums received by Roman from Publicker and the outside party purchasers. On the first appeal, we concluded that the district court had apparently awarded Roman recovery of the price under U.C.C. § 2–709. However, we noted that the district court's failure to decide whether Roman was unable to resell the bottles at a reasonable price rendered a damage award under section 2–709 unsupportable. In addition, we noted that the findings were similarly inadequate to support recovery under U.C.C. § 2–708(1) of the difference between the contract price and the market

& Co. v. Trugman, 109 N.J.Super. 594, 264 A.2d 237, 239 (App.Div.1970); Simmons v. Cherry, 43 N.C.App. 499, 259 S.E.2d 410 (1979); Kalberg v. Gilpin Co., 279 S.W.2d 177, 181 (Mo. App.1955).

**10.** For instance, "[t]he inference that the agent is not a party to a contract may be overcome" on the basis of evidence "that the other party declared that he did not care who the principal was or that he was satisfied with the credit of the agent." Restatement § 320, Comment c. Accord, Kiska v. Rosen, 181 Pa.Super. 506, 124 A.2d 468, 469–70 (1956) ("A person contracting as an agent will be liable, whether he is known to be an agent or not, in all cases where he . . . voluntarily incurs a personal responsibility either expressed or implied."); Western Cas. & Sur. Co. v. Bauman Ins. Agency, Inc., 81 Ill. App.3d 485, 36 Ill.Dec. 773, 401 N.E.2d 614, 615–16 (1980) ("An agent may expressly agree to be personally bound or it may be inferred by implication reasonably drawn from all the facts and circumstances in evidence."); Simmons v. Cherry, 259 S.E.2d at 412; Kalberg v. Gilpin Co., 279 S.W.2d at 181 (exception to general rule "where the contract or circumstances of the transaction discloses a mutual intention to impose a personal responsibility on the agent").

**11.** E.g., Joseph Lupowitz Sons, Inc. v. Commissioner, 497 F.2d 862, 865 (3d Cir. 1974).

**12.** Indeed, Pennsylvania courts have held an agent bound on a contract where evidence of the agent's personal undertaking was much slimmer than it is here. See Darlington Brick & Clay Prods. Co. v. Aino, 225 Pa.Super. 186, 310 A.2d 401 (1973); cf. Weimer v. Bockel, 128 Pa.Super. 385, 194 A. 318 (1937) (holding officer-stockholder liable on a contract for services rendered on behalf of the corporation).

**13.** Our discussion will relate solely to the damages for Publicker's repudiation of its agreement to pay for the 40,000 "defective" bells. See n.1 supra. Publicker was also held liable, at the end of the original trial, on a claim of $9,864.30 for the balance due on open account for the "sound" bells. That award was not challenged by Publicker at any time subsequent to the first trial except on the (erroneous) theory that Publicker could not be held liable on an agreement to purchase liberty bells. As we have rejected that theory in Part I supra, and as Publicker has offered nothing to distinguish its liability to pay for the "sound" bells from its liability to pay for the "defective" bells (and we can certainly discern no meaningful distinction on this record), we affirm that part of the district court order awarding Roman judgment, with interest, on the open book account.

price. Therefore, we directed that if on remand the district court were to determine that Publicker was liable, then it should make findings necessary "to support the calculation of damages under the appropriate provision of the Uniform Commercial Code." 603 F.2d at 1073.

At the hearing on remand, Harold Roman testified that after offering the bells to several potential buyers, he received an offer of 40 cents per bell for all 40,000. Publicker, on the other hand, presented a witness who had conducted inventory audits of Roman's warehouses in 1979 and 1980, and who testified that at that time Roman did not, apparently, possess 40,000 bells and tops in finished form. Publicker also presented witnesses who testified to sales of bells at prices between $1.00 and $3.50 per bell. Based on this evidence, the district court chose to award damages under Pa. Stat. Ann. tit. 12A, § 2–708.[14] It found that the contract price was $2.50 per bottle, that the market price on the date of the breach was 40 cents, "and therefore that damages should be calculated on the basis of $2.10 per bottle." The court then calculated a total award of $84,000 of which $40,000 had already been paid, leaving a balance of $44,-000 plus interest. Publicker now contends that the damage award (1) is calculated on the basis of an unduly low market price, (2) is calculated on the basis of an unduly high number of bells to be purchased under the contract, and (3) fails to account for expenses saved as a result of the breach.

Initially, we must reject Publicker's contention as to market price. The evidence on this issue was conflicting, but the most probative evidence of "the market price at the time and place for tender" was clearly Roman's. Publicker's witnesses produced evidence of transactions only long after the time for tender, and for quantities vastly smaller than 40,000. Moreover, it was not even clear whether the buyers in these transactions knew that the bells were defective.

■ Secondly, we must reject Publicker's contention that the contract was limited to the sale of only those bells for which tops were available at the time of Publicker's audit of Roman's inventory. The district court found an agreement to purchase 40,000 bells. Publicker introduced no evidence of a contrary agreement, but only a lesser number of bell tops in inventory in 1980. We fail to see the relevance of Roman's apparent short-fall in tops several years after the transaction was to take place, except as indicating perhaps a saved expense.

■ This brings us to Publicker's most serious contention, namely that the district court failed to give any credit for expenses saved. The district court heard conflicting evidence on this issue but concluded only that it was uncertain "concerning the identification of these bottles with the contract" and uncertain "as to whether it would have cost more than 40 cents per [bell] to resell them." It is clear, however, that the 1,200 bells sold earlier by Roman to an outside party for $3,250 *were* identified to the contract. Such a finding was made at the end of the first trial, and was not challenged on remand. Furthermore, Roman's right to sell *any* bells outside the sale to Publicker was a matter governed by the contract between Roman and Publicker. Therefore we have no difficulty holding, consistently with the opinions rendered in the first round of this litigation, that the outside sale constituted a gain made possible only by the buyer's breach,[15] rather than a separate, unrelated sale comparable to that of a "lost

14. This section was repealed effective January 1, 1980, and replaced by a substantially similar section, 13 Pa.Cons.Stat.Ann. § 2708 (Purdon Supp.1980).

15. 5 A. Corbin, Contracts § 1041 (1964); *see* Restatement (Second) of Contracts § 361, Comment d, at 33 (Tent.Draft No. 14, 1979) ("If the injured party avoids further loss by making substitute arrangements for the use of his resources that are no longer needed to perform the contract, the net profit from such arrangements is also subtracted."); *Buono Sales, Inc. v. Chrysler Motors Corp.*, 449 F.2d 715, 720 (3d Cir. 1971); *Burks v. Sinclair Ref. Co.*, 183 F.2d 239, 243–44 (3d Cir. 1950).

volume" seller.[16] As a result, we will not uphold that portion of the damage award that, in effect, compensates Roman doubly for the 1,200 sold bottles.

■ On the other hand, Publicker would also have us award it credit for the expenses supposedly saved by Roman's failure to conform all 40,000 bells to the contract. The district court specifically refused to make findings on this issue, saying only that it was "uncertain" as to the existence of any expenses saved. However, it was settled at the end of the first trial that (a) Roman was ready, willing and able to ship over 50,000 bells upon instructions from Publicker, and (b) that Publicker gave Roman no clue as to the "finishing touches" it wished Roman to apply to the bottles. Thus, Publicker's present argument relating to expenses saved seems to us to be an attempt to exercise an option that it may once have held, but that it chose to forego. True, the district court had no doubt that, even in light of Publicker's failure to give additional instructions, Roman could not now perform its end of the bargain without incurring additional costs. However, we cannot tell whether the court saw Roman's problem as one of antiquing the bells, of manufacturing more tops, or of packing the bells in shipping cases.

We must reject the notion that Roman would have been obliged to antique the bells, because Publicker never made it clear whether such antiquing was necessary. As to the tops, we see no evidence in the record that sufficient tops were not in Roman's possession in 1976, or what their cost would have been had Roman been obliged to make them. In other words, the district court made no findings as to how much additional expense would have been incurred by Roman had it completed all work on the bells in 1976. The uncertainty on this issue was engendered by Publicker's dilatory and erratic course of conduct. Therefore, we believe that it would be unfair, at this stage, to saddle Roman with the burden of quantifying the wholly speculative amount of expense saved in 1976. We conclude that the district court's damage award represents a considered determination that this element of the expense saved, if indeed it was saved, was too speculative, and most likely too insignificant, to enter into the damage award. Given the unusual circumstances presented by this litigation, we will not disturb that determination.[17]

Finally, there was conflicting evidence on the packing expenses allegedly saved by Roman. Harold Roman testified that it would have been unreasonable to accept the outside offer of 40 cents per bell for all 40,000 bells because 40 cents would not even cover his packing costs. Publicker's counsel claimed by way of rebuttal that at least 23,000 bells had already been packed at the time of the 1980 inventory audit, thus relieving Roman of such expense upon resale.

In reality, it was necessary for Roman to pack the bottles for storage during the five year period in which this dispute has ground along.[18] Viewing the evidence under the "clearly erroneous" standard, we see no reason to believe that Roman incurred less cost in packing the bells for storage than in packing the bells for shipment to Publicker. On the contrary, we are

---

**16.** *See generally* Restatement (Second) of Contracts § 361, Comment f, at 38 (Tent.Draft No. 14, 1979); *Famous Knitwear Corp. v. Drug Fair, Inc.*, 493 F.2d 251, 254 n.5 (4th Cir. 1974).

**17.** Our decision on this issue is not in any way intended to indicate a general rule for the allocation of the burden of proof on questions of expenses saved under U.C.C. § 2–708(1). *Cf.* Annot., 17 A.L.R.2d 968, 972 (1951).

**18.** The district court denied Roman's claim for storage charges, believing that it would have been "inconsistent with the terms of the remand to permit this new issue to be raised and litigated at this late date." Arguably, some of the charges incident to storage were "incidental damages" for which findings could have been made, pursuant to the terms of our remand, under U.C.C. § 2–708(1). However, we agree with the district court that at this late date we ought not to begin entertaining arguments on factual questions of damage that were totally ignored by the parties at the time of the original trial. By the same token, it would be unfair to Roman to turn around and take the opposite view with respect to Publicker's new claims on expenses saved.

satisfied that the district court's damage award is supportable (outside of its failure to credit Publicker for the $3,259 received by Roman in outside sales, plus interest for the appropriate period) notwithstanding its failure to deduct the wholly speculative elements of finishing and packing charges now asserted by Publicker.

### III.

■ Having decided to affirm the judgment of the district court in substantially all respects, we must address Roman's request for damages under Fed.R.App.P. 38.[19] At the first trial, the district court concluded that Publicker's entire course of dealing between January 1976 and the time of the first trial evinced

> a carefully conceived but not very subtle plan to stick Roman Ceramics Corporation with a lot of liberty bell bottles which the plaintiffs agreed to take and later reneged on.
>
> ... They wanted to leave the defendant, Roman Ceramics Corporation, stuck with these bottles until so late in the Bicentennial year that they would not be able to dispose of them at decent prices elsewhere and then hoped to limit their exposure to a very modest sum in order to protect their sales of their $20 whiskey bottles.
>
> ... [E]ven having done that at $2.50 per bottle, they didn't pay hoping that they would be able to get the defendant in a position where the price would be worked out still lower.

The history of this litigation and this additional appeal also raise serious questions whether Publicker was motivated by chances of success or by a desire to draw out the proceedings as long as possible. On the issue of Publicker's liability, the district court noted after the second trial that

> reviewing the record as a whole, one is left with the distinct impression that this is a case of button-button, who has got the button or which pod has the pea under it insofar as the corporate set-up as between Publicker and Continental.[20]

Moreover, Publicker provided neither this court nor the district court with any substantial legal arguments to justify the positions taken on this appeal,[21] nor with any probative factual data upon which to upset the district court's damage award, perhaps the most vulnerable aspect of the award and the only one as to which we believed Publicker might have had a colorable claim. We recognize that in reducing the judgment against Publicker by over $3000, it is apparent that not all aspects of its appeal were, strictly speaking, without merit. However, we note that Publicker apparently did not request the modification that we now make when it submitted its proposed order to the district court; and we have now entertained Publicker's dilatory claim for relief on this issue only because the issue was so fully and clearly disposed of in the first round of litigation.

Therefore, it may be fairly argued that the "full record reveals little real excuse for this second appeal." *United States ex rel. Soda v. Montgomery*, 269 F.2d 752, 755 (3d Cir. 1959). We are left with the lingering suspicion that Publicker may have deliberately delayed the payment of the money owed under the judgment because of the differential between the legal rate of interest and the interest that may be earned in the money market or elsewhere. However, given the uncertainties expressed by the district court with respect to credits claimed

---

19. Rule 38. Damages for Delay. If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee.

20. *Cf. Fluoro Elec. Corp. v. Branford Assocs.*, 489 F.2d 320, 326 (2d Cir. 1973) (awarding Rule 38 damages after three appeals in which there was no pretense to any ground for appeal other than the claim that the judgment was against the wrong entity).

21. *Cf. Mid-Jersey Nat'l Bank v. Fidelity Mortgage Investors*, 518 F.2d 640, 642 n.1 (3d Cir. 1975); *Babcock & Wilcox Co. v. Foster Wheeler Corp.*, 432 F.2d 385, 388 (3d Cir. 1970), *cert. denied*, 401 U.S. 938, 91 S.Ct. 930, 28 L.Ed.2d 217 (1971). In each of these cases, the court denied Rule 38 damages. However, in each case, the court was presented with credible legal arguments for overturning the decision of the district court.

by Publicker, and given the divergence between the theories set forth in the earlier proceedings and the theory ultimately adopted by the district court, we will deny Roman's claim for damages under Rule 38.

## IV.

The decision of the district court will be affirmed, except insofar as it fails to credit Publicker for the $3,259 received by Roman in outside sales of liberty bells, plus the interest on that sum for the appropriate period. Costs taxed against appellant.